**MONROE COUNTY OIL CO., INC.**

v.

**AMOCO OIL COMPANY.**

**No. IP 85–498–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 23, 1987.

H. Kennard Bennett, Indianapolis, Ind., for plaintiff.

William P. Wooden, Indianapolis, Ind., for defendant.

STECKLER, District Judge.

This matter is before the Court upon the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. This rule states, in part, that:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). In ruling on a summary judgment motion, the district court must examine the evidence in the light most favorable to the nonmoving party by drawing all reasonable inferences in favor of that party. *See United States Shoe Corp. v. Hackett*, 793 F.2d 161, 166 (7th Cir.1986); *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The Court, having examined the motion, the memorandums and the exhibits, finds that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law. The Court now enters the following findings of fact and conclusions of law.

### Findings of Fact

1. The plaintiff, Monroe County Oil Co., Inc. (Monroe), is an Indiana corporation with its principal place of business in Bloomington, Indiana. The defendant, Amoco Oil Company (Amoco), is a Maryland corporation with its principal place of business in Chicago, Illinois. The amount in controversy exceeds ten thousand dollars ($10,000.00) exclusive of costs and interest.

2. Monroe and Amoco entered a written Jobber Contract on May 21, 1981. Under the contract, Monroe operated as an Amoco jobber in Monroe County, Indiana. As an Amoco jobber, Monroe purchased petroleum products directly from Amoco and then sold the products to others, such as gasoline service stations.

3. The Jobber Contract between Monroe and Amoco stated, in part, that:

VI.—**Credit Terms:** Credit terms shall be as set forth in Seller's [Amoco's] Terms of Sale contained in Seller's Price Guide or other posting at its regional office, as same are applicable to Buyer's [Monroe's] class of trade for the respective product and delivery point on date of delivery. Seller reserves the right to change such credit terms at any time, either for the class of trade generally, or, with cause, for Buyer alone, and Seller shall have the right at any time to demand cash payment on or before delivery. Failure of Buyer to make payment according to authorized credit terms shall entitle Seller to suspend deliveries and/or to terminate this Contract, at Seller's election.

\*　　\*　　\*　　\*　　\*　　\*

XIX.—**Option:** Buyer shall not sell, lease or otherwise dispose of Buyer's business as related to this contract, or any major segment thereof (such as the distillate segment or the gasoline segment), or all of its real or personal property used in connection therewith or any bulk plant or terminal used therein without first giving Seller an option to purchase or otherwise acquire the same on the same terms and conditions as those the Buyer is willing to enter into with any other party. Buyer shall promptly submit to Seller the complete terms and conditions of any bona fide offer received from or made to any third party which is acceptable to Buyer, and Seller shall thereafter have forty-five (45) days within which to exercise said option by written notice. Closing shall be held at a time and place mutually agreeable to the parties not earlier than the thirtieth (30th) day after Seller's notice exercising the option, and at the closing Buyer shall convey, assign, and transfer all real property with good and marketable record title to Seller by full covenants and warranty deeds and as to other property by assignments, bills of sale and other documents that may be necessary, in form satisfactory to Seller, subject only to such liens and encumbrances as are specifically acceptable to such third party.

\*　　\*　　\*　　\*　　\*　　\*

XXII.—**Assignment:** Buyer shall not assign this contract (voluntarily or by operation of law or otherwise) without Seller's prior written consent; provided, however, Seller shall not unreasonably

withhold its consent, and further provided, that in giving any consent to any assignment (voluntary or by operation of law or otherwise), Seller may, at its election, condition the consent upon the agreement of the proposed assignee or transferee to: (1) enter into a Trial Franchise in conformity to the provisions of the Petroleum Marketing Practices Act; and (2) simultaneously therewith, enter into a Mutual Cancellation of this Jobber Contract. Refusal of the proposed assignee or transferee to enter into such Trial Franchise and Mutual Cancellation shall conclusively be adequate reason for Seller to withhold its consent to the assignment. In situations where clause 3 of the third subparagraph of Paragraph XVI is or might be applicable, the provisions of that clause shall govern and shall supersede the provisions hereinabove contained in this Paragraph XXII.

4. Monroe failed to make timely payments to Amoco under the Jobber Contract. Amoco required Monroe to pay cash on delivery for future shipments of Amoco petroleum products and pay an additional $3,000.00 on each shipment to cure its delinquency. During March and April of 1983, Monroe gave Amoco eleven bad checks in the total amount of $72,700.54.

5. On April 18, 1983, Monroe sent Amoco a letter of intent which Kiel Brothers Oil Co., Inc. (Kiel) had executed on April 14, 1983. The letter of intent contained Kiel's proposal to purchase certain assets of Monroe. The letter stated in paragraph 10 that

This document is not to be construed to be an offer or purchase agreement. It is, however, a statement of the intentions upon which a forthcoming offer will be proposed.

6. On April 19, 1983, Amoco sent Monroe a letter by certified mail. The letter stated that Amoco was terminating the Jobber Contract with Monroe effective July 19, 1983, for the reason that Monroe had failed to make timely payment of all sums due Amoco. The letter further stated:

We acknowledge receipt of your letter dated April 18, 1983, to our Mr. Stan Hampton, district manager Indianapolis

district enclosing two letters of intent, namely one from Monroe County Bank and one from Kiel Bros. Oil Company. Upon review, it is apparent that these documents do not reflect a binding bona fide offer as is contemplated by Paragraph XIX of the Jobber Contract and, for this reason, we must decline to consider same.

7. On April 26, 1983, Monroe filed a voluntary petition in bankruptcy for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Indiana, Bankruptcy No. IP 83–1661V.

8. On June 14, 1983, the Bankruptcy Court allowed Monroe to accept the offer of the Stuart Moore Oil Corporation to purchase some of Monroe's assets.

9. On August 22, 1984, the Bankruptcy Court approved Monroe's amended plan of reorganization. Under the amended plan, Amoco received 50% of its $180,000.00 claim against Monroe.

10. On April 15, 1985, Monroe filed this lawsuit against Amoco. Monroe has voluntarily dismissed some counts of its original complaint. Monroe has also amended the original complaint to add new counts. Monroe's theories of liability in the complaint, as amended, are as follows:

Count I—Alleges violation of section 2 of the Sherman Antitrust Act (15 U.S.C. § 2).

Count II—Alleges violation of Ind. Code § 24–1–2–2 (Indiana Antitrust statute).

Count IV—Alleges breach of contract by unreasonable withholding of consent.

Count IVA—Alleges breach of contract by revocation of consent.

Count V—Alleges breach of implied covenant of good faith.

Count VI—Alleges tortious interference with a contractual relationship between Monroe and Kiel.

Count VIA—Alleges tortious interference with a business relationship between Monroe and Kiel.

Count IX—Alleges violation of Ind. Code § 23–2–2.7–2(5) (Indiana Deceptive

Franchise Practices Act) by unreasonably withholding or revoking consent.

Count X—Alleges violation of Ind.Code § 23–2–2.7–1(3) (Indiana Deceptive Franchise Practices Act) by the inclusion of a provision in the Jobber Contract which allows the unilateral modification of credit terms.

Monroe did not disclose any of these claims to the Bankruptcy Court during the bankruptcy proceedings.

### Conclusions of Law

Based on the foregoing findings of fact, the Court now makes the following conclusions of law.

1. The Court has jurisdiction over the subject matter of this action. 28 U.S.C. § 1332.

2. The doctrine of equitable estoppel bars Monroe from asserting the claims of its amended complaint in this action. All of the claims of the amended complaint were in existence during the bankruptcy proceedings, yet Monroe did not disclose any of the claims in its bankruptcy petitions, plans of reorganization or disclosure statements. Equitable estoppel may arise when a party is silent though it had an opportunity to speak and an imperative duty to do so. *See Clark v. Millikin Mortgage Co.,* 495 N.E.2d 544, 548 (Ind.Ct. App.1986). In a Chapter 11 bankruptcy proceeding, the debtor must file a disclosure statement which contains "adequate information." 11 U.S.C. § 1125(b). Among other things, the debtor must disclose any "litigation likely to arise in a nonbankruptcy context." *In re Metrocraft Publishing Services, Inc.,* 39 B.R. 567, 568 (Bankr.N.D.Ga.1984). *See also In re Malek,* 35 B.R. 443 (Bankr.E.D.Mich.1983). Although Monroe stated in its plan of reorganization that it retained "all causes of action it may have under the United States Bankruptcy Code," it made no reference to litigation likely to arise in a nonbankruptcy context. When a debtor fails to disclose claims that it has during the bankruptcy proceedings, it is equitably estopped from bringing the claims after the approval of the plan of reorganization. *See In re Gal-*

*erie Des Monnaies of Geneva Ltd.,* 55 B.R. 253, 259 (Bankr.S.D.N.Y.1985), *aff'd,* 62 B.R. 224 (S.D.N.Y.1986). Therefore, the plaintiff's claims in this case are barred.

3. The doctrine of res judicata bars Monroe from asserting Counts I, II, IV, IVA, V, VI, VIA, and IX of the amended complaint in this action. These counts all relate to Amoco's alleged interference with the business and contractual relations of Monroe and Kiel. Under Indiana law, the doctrine of res judicata bars the litigation of claims which might have been determined in a prior suit between the same parties. *See Alsup v. Spratt,* 577 F.Supp. 557, 562 (N.D.Ind.1983), *aff'd,* 768 F.2d 879 (7th Cir.1985). Here, the Bankruptcy Court approved the sale of part of Monroe's assets to the Stuart Moore Oil Corporation. The Bankruptcy Court could have also decided the issues concerning the sale of the same assets to Kiel. Monroe and Amoco were both parties to the bankruptcy proceeding, and the Bankruptcy Court's order approving the sale of Monroe's assets was rendered on the merits. Therefore Counts I, II, IV, IVA, V, VI, VIA, and IX of the amended complaint are barred.

4. The statute of limitations bars Monroe from asserting Count X of the amended complaint in this action. Count X of the amended complaint alleges that Amoco violated the Indiana Deceptive Franchise Practices Act, Ind.Code § 23–2–2.7–1(3), by including a provision in the Jobber Contract which allows the unilateral modification of credit terms. If the Jobber Contract contained an unlawful provision under this section, then Monroe's cause of action accrued when the contract was executed, May 21, 1981. Under Ind.Code § 23–2–2.7–7 no action can be brought more than two years after the violation of the Act. Monroe did not file this lawsuit until April 1985, more than two years after the contract was executed. Therefore Count X of the amended complaint is barred.

5. Amoco did not unreasonably withhold or revoke its consent to the assignment of the Jobber Contract to Kiel.

The letter of intent executed by Kiel on April 14, 1983, was not a bona fide offer to purchase, so that Amoco had no occasion to exercise its option to purchase under Paragraph XIX of the Jobber Contract. Further, Amoco was not requested to give its written consent to the assignment of the Jobber Contract to Kiel under Paragraph XXII of the Jobber Contract.

 6. Monroe is not entitled to relief for breach of an implied covenant of good faith and fair dealing since Indiana law does not recognize such an implied covenant. *See Communications Maintenance, Inc. v. Motorola, Inc.,* 761 F.2d 1202, 1210 (7th Cir.1985).

7. There are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law.

By reason of all of the foregoing, the defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.