**In re Robert LILL, Jr. and Vickie S. Lill, Debtors.**

**Robert LILL, Jr. and Vickie S. Lill, Plaintiffs,**

v.

**Beaver BRICKER, Defendant.**

**Bankruptcy No. 1–87–00654.**
**Adv. No. 89–0114.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

May 21, 1990.

Douglas S. Roberts, Columbus, Ohio, for plaintiffs.

Louis J. Yoppolo, Toledo, Ohio, for defendant.

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFFS' COMPLAINT

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the court upon Defendant's motion for summary judgment requesting dismissal of Debtors'/plaintiffs' complaint to recover a preference to which plaintiffs have responded. Upon consideration thereof, the court finds that said motion is well taken and should be granted and that plaintiffs' complaint should be dismissed.

## FACTS

On December 30, 1986, a check in the amount of $11,360, made payable to defendant Beaver Bricker drawn upon Lill Farms was executed by Sharon Lill. Exhibit List of Debtors, Exhibit 4; Exhibit List of Defendant, Exhibit D. Said payment represented payment on a mortgage in favor of defendant secured by certain real property of plaintiffs. Debtors' Exhibit 3; Defendant's Exhibit C. Defendant had a claim in the amount of $142,000 as of the date of the filing of plaintiffs' petition. *See* Debtors' Petition, Schedule A–2; Defendant's Exhibit F at 6. *But see* Debtors' Interrogatories to Secured Creditor at 4 ($153,360). Defendant believes he received the check in mid January and deposited it at his bank on or about January 20, 1987. Memorandum Contra Defendant's Motion for Summary Judgment, Exhibit 2 (hereinafter Memo Contra). On April 1, 1987, plaintiffs filed their voluntary petition under chapter 11.

On August 14, 1987, plaintiffs filed their disclosure statement and plan of reorganization. Plaintiffs filed a first amended disclosure statement on February 24, 1988. In pertinent part, plaintiffs' first amended disclosure statement stated:

The debtors reserve any right to pursue any claims they may have against any party, including any preferential transfers, fraudulent transfers, or other avoiding power recoveries which might increase the assets of the estate; Debtors do not know if any such claims exist which might increase the assets available in a Chapter 7 liquidation.

Debtors' First Amended Disclosure Statement, pp. 46–47.

Defendant disclosed receipt of this check to plaintiffs in May, 1988. Consolidated Trial Brief and Memorandum in Support of

Motion for Summary Judgment of Defendant Beaver Bricker at 2; Memo Contra at 3. Subsequently, on August 19, 1988, plaintiffs filed a second amended joint plan of reorganization, which was confirmed on August 24, 1988, which provided in pertinent part:

> The debtors reserve any right to pursue any claims they may have against any party, including any preferential transfers, fraudulent transfers, or other avoiding power recoveries which might increase the assets of the estate; debtors do not know if any such claims exist which might increase the payout to unsecured creditors in a Chapter 7 liquidation. However, if debtors are able to recover any assets as a result of the abovementioned claims, debtors shall use such assets or the proceeds thereof to first pay allowed administrative expenses in Class A–1 and then, if any monies are left over, to pay, on a pro rata basis, those claims which have been allowed in Class C–1.

Second Amended Joint Plan of Reorganization p. 15.

On June 13, 1989, plaintiffs filed the instant complaint to recover a preference as a result of defendant's receipt of the check in issue. On January 29, 1990, defendant filed the instant motion for summary judgment requesting dismissal of plaintiffs' complaint for the reasons that the check does not represent property of plaintiffs' estate as it was drawn upon a partnership account of which Debtor Robert Lill is a partner; that the check does not represent a transfer within 90 days of the filing of plaintiffs' petition; that plaintiffs are estopped from asserting this claim as a result of the language contained in the amended disclosure statement and plan upon which defendant relied; and that defendant is a secured creditor and, therefore, no preference exists.

Plaintiffs, in responding to defendant's motion, assert that because Debtor Robert Lill and his father, partners of Lill Farms, frequently paid personal bills out of the partnership account, said payment was property of plaintiffs' estate; that the transfer of plaintiffs' property was accomplished when defendant received the check sometime after January 1, 1987; and that institution of this action is not contrary to any agreement of the parties. That is, the parties entered into an agreement at a hearing held on June 2, 1988, which, according to defendant, should result in dismissal of plaintiffs' complaint.

At the June 2, 1988 hearing held upon defendant's motion for determination of the value of its secured claim and confirmation of plaintiffs' plan, and as a result of negotiations between these parties, it was agreed that the real estate securing defendant's claim be valued at $134,000. Furthermore, at that hearing, counsel for defendant stated that this stipulation settled "all matters between the parties [and] therefore [defendant] is also withdrawing his objection to confirmation of plan." *See* Defendant's Exhibit G at 3. An order reflecting this valuation was entered by the court on July 11, 1988. *See* Plaintiffs' Exhibit 3; Defendant's Exhibit C. Defendant contends this agreement mandates dismissal of plaintiffs' complaint.

### DISCUSSION

Although plaintiffs contend that there "exist disputed issues of material fact pertinent to plaintiffs claim against the defendant" the court finds that the facts pertinent to resolution of this matter are not in dispute.

Defendant's motion may be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c) (made applicable by Bankruptcy Rule 7056). Resolution of plaintiffs' complaint is governed by 11 U.S.C. § 547(b) which sets forth the elements of a preferential transfer. Plaintiffs, in order to avoid this transfer, pursuant to § 547(b), must establish that it represents a

> ... transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

* * * * * *

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

At the outset, the court notes that plaintiffs have the burden of proving the avoidance of the transfer in issue. 11 U.S.C. § 547(g). That is, Debtors must prove, by a preponderance of the evidence, that the elements of § 547(b) exist. *See Matter of Prescott*, 805 F.2d 719, 726 (7th Cir.1986) (trustee has the burden of proving the first, second, fourth and fifth elements of a preference by a preponderance of the evidence (citations omitted)); *In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir.1988) (trustee has burden of proving existence of these elements). There is no dispute that defendant received a payment for its benefit on account of an antecedent debt. The issues for resolution by this court include whether that payment represents transfer of an interest of property of the estate, whether that payment was made within 90 days before the filing of plaintiffs' petition and whether that payment enabled defendant to receive more than he would if this case were a chapter 7 case.

## STATUTE OF LIMITATIONS

■ Initially, the court finds that plaintiffs' complaint is untimely. Section 546(a) states that an action under § 547 may not be commenced after two years after the appointment of a trustee. Plaintiffs, as Debtors in possession, are granted all the rights of a trustee, subject to any limitations on a trustee. 11 U.S.C. § 1107. The instant action was commenced on June 13, 1989; plaintiffs filed their petition on April 4, 1987. More than two years had elapsed prior to institution of this action. Plaintiffs' complaint is untimely and should be dismissed.

## ESTOPPEL

Defendant also states that plaintiffs are estopped from pursuing this action as a result of prior negotiations with and pleadings filed by plaintiffs. That is, at the June 2, 1988 hearing, *see* discussion *supra* p. 545, defendant withdrew his objection, stating that all matters between the parties were settled. Defendant also claims that he relied upon language contained in plaintiffs' first amended disclosure statement and second amended plan to include any matters between these parties. *See supra* pp. 544–545. That is,

[t]he undisputed record in this case consisting of the schedules, the approved disclosure statement and plan, however, fail to adequately notify the creditors of the existence of this claim.

Reply to Plaintiffs' Memorandum Contra, p. 3.

■ A party claiming equitable estoppel must establish that:

1) a representation of fact was made to [him],

2) upon which [he] had a right to rely and did so rely, and

3) that the denial of the represented fact by the party making the representation would result in injury to the relying party.

*Wheeling–Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 162 (3d Cir.1987) (citations omitted). "In a Chapter 11 bankruptcy proceeding, the debtor must file a disclosure statement which contains 'adequate information.'" *Monroe County Oil Co., Inc. v. Amoco Oil Co.*, 75 B.R. 158, 162 (S.D.Ind.1987) and 11 U.S.C. § 1125(b).

All of the claims of the amended complaint were in existence during the bankruptcy proceedings, yet [plaintiffs] did not disclose any of the claims in [their] bankruptcy petitions, plans of reorganization or disclosure statements. Eq-

uitable estoppel may arise when a party is silent though it had an opportunity to speak and an imperative duty to do so. *Monroe County Oil Co.*, 75 B.R. at 162 (citations omitted). Furthermore,

> [t]he importance of full disclosure is underlaid by reliance placed upon the disclosure statement by creditors and the court. Given this reliance, we cannot overemphasize debtor's obligation to provide sufficient data to satisfy the Code standard of "adequate information."

\* \* \* \* \* \*

> ... The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against subsequent attempts to prosecute the actions.

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir.1988) (citations omitted), *cert. denied* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). Additionally,

> judicial estoppel ... protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.

*Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir.1988) (citations omitted). *See also Oneida Motor Freight, Inc.*, 848 F.2d at 419. Furthermore, "courts have held statements or omissions by a Debtor in a disclosure statement is sufficient for a finding of judicial estoppel." *Reynolds*, 861 F.2d at 474.

Defendant asserts that the language in plaintiffs' disclosure statement fails to "adequately notify the creditors of the existence of this claim." Reply to Plaintiffs' Memorandum Contra, p. 3. The court agrees with this conclusion. Although plaintiffs contend that the language in the second amended joint plan of reorganization, *see supra* p. 545, reserved plaintiffs' right to pursue the instant action against defendant, the court finds that equitable and judicial estoppel prevents plaintiffs' recovery against defendant.

On May 26, 1988, defendant filed his answers to interrogatories served by plaintiffs, advising plaintiffs that he "received check for $11,360.00 in January 1987, dated December, 1986." Plaintiffs' Exhibit 10 at 7; Defendant's Exhibit F at 7. These interrogatories were served upon defendant on or about May 4, 1988. Defendant, on June 2, 1988, withdrew his objection to confirmation of plaintiffs' plan. In orally withdrawing that objection, defendant's counsel stated that "I think that settles all matters between the parties [and] therefore [defendant] is also withdrawing his objection to confirmation of plan." Defendant's Exhibit G at 2. Thus, defendant relying upon the parties' settlement withdrew his objection to confirmation. The finality of this arrangement will not be disturbed, causing detriment to defendant.

Additionally, pursuant to a correspondence from plaintiffs' counsel dated March 16, 1990, the parties agreed that there was no necessity to amend the previous disclosure statement to reflect the parties' settlement resulting from the June hearing. This correspondence further evidences that all matters between the parties were discussed and that defendant's objection was withdrawn in reliance upon this settlement. That is, all of the elements of a possible preferential action were in existence at the time of the hearing, after which defendant withdrew his objection; yet, plaintiffs "did not disclose any of the claims in its bankruptcy petition, plans of reorganization or disclosure statements." *See Monroe County Oil Co., Inc.*, 75 B.R. at 162. "When a debtor fails to disclose claims that it has during the bankruptcy proceedings, it is equitably estopped from bringing the claims after the approval of the plan of reorganization." *Id.* Plaintiffs are equitably estopped from recovering the payment to defendant.

Because the second amended plan was confirmed on August 24, 1988, and because the parties to this action agreed that all matters between them were settled, plaintiffs may not, now, assume a position inconsistent with the parties' settlement. Furthermore, the confirmed plan has been effective between plaintiffs and their creditors and parties in interest for approxi-

mately 21 months; plaintiffs' bankruptcy case was closed on August 31, 1989. The court will not circumvent the confirmation process nor disturb the relationships established by that plan by permitting plaintiffs to recover the payment to defendant. That is, "a strong interest to achieve finality pervades Chapter 11 arrangements." *Oneida Motor Freight, Inc.*, 848 F.2d at 417 (citations omitted). "We can assume that revealing the potential action may also have impacted upon [defendant's] decision to enter into the stipulation" and to withdraw his objection. *See id.* at 418. Although the court finds that plaintiffs' complaint is untimely and that plaintiffs are estopped from asserting this cause of action, the court will, nevertheless, review the elements of plaintiffs' complaint as applied to the facts herein.

### PREFERENCE

■ Although "interest of the debtor in property" is not defined in title 11, it is broadly interpreted to include property which if transferred deprives the bankruptcy estate of funds which could be used to satisfy claims of creditors. *Bullion Reserve of North America*, 836 F.2d at 1217 (citations omitted). That is, property subject to plaintiffs' control and that plaintiffs transfer depleting their estate is avoidable. *See also In re Kannry & Morton, Inc.*, 91 B.R. 93, 94 (Bkrtcy.N.D.Cal.1988) (transfer that diminishes property is subject to avoidance); *In re Kleckner*, 93 B.R. 143, 148 (N.D.Ill.1988) (property subject to Debtor's control that depletes estate is property of Debtor).

Thus, where a debtor has paid existing debts, the funds used as payment are presumed to be the debtor's property absent some proof to the contrary offered by those defending the transfer.

*In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir.1987) (although court was deciding a fraudulent transfer, the court referred to cases establishing the general rule for preferential transfers (citations omitted)). *See also Bullion Reserve of North America*, 836 F.2d at 1217 (money from commingled bank accounts under

Debtor's control could have been used to pay other creditors and is, therefore, presumptively property of Debtor's estate (citations omitted)).

■ In the instant situation, plaintiffs assert that because Debtor Robert Lill "instructed the partnership to use a portion of my percentage draw to pay [defendant]" said payment represents property of plaintiffs' estate. *See* Memo Contra, Affidavit. Defendant contends that "since the payment came from the partnership, it was not a transfer of property of the debtor." Consolidated Trial Brief at 3. The court notes that although the check in issue was drawn upon "Lill Farms", a partnership of which Debtor Robert Lill, Jr., was a partner, Debtor Robert Lill, Jr. had control over these funds and instructed payment therefrom to defendant. Because plaintiff Robert Lill had control over these monies, the payment constitutes property in which plaintiffs had an interest. This payment and accompanying depletion of funds available for distribution to plaintiffs' creditors represents transfer of an interest of the plaintiffs in property.

The court would note, at this juncture, that it is concerned about plaintiffs' transfer from the partnership account as Lill Farms also filed a chapter 11 petition. However, the court need not reach any issues regarding depletion of the Lill Farms estate as, for the reasons stated above, plaintiffs' complaint should be dismissed.

The next issue concerns the date of the payment. Defendant admitted that he received the check, dated December 30, 1986, in mid January, 1987, and deposited same at his bank on or about January 20, 1987. Memo Contra, Exhibit 2; Defendant's Exhibit F at 7. In fact, the cancelled check appears to have been negotiated on January 21, 1987. Plaintiffs' Exhibit 4; Defendant's Exhibit D.

■ A check represents an "order to pay on demand." *Matter of Foreman Industries, Inc.*, 59 B.R. 145, 148 (Bkrtcy.S.D. Ohio 1986) (citations omitted). For this reason, a transfer for purposes of § 547(b) does not occur until a check is honored by

the drawee bank. *Id. See also In re Nucorp. Energy, Inc.,* 92 B.R. 416, 418, 18 B.C.D. 550, 19 C.B.C.2d 851 (9th Cir.B.A.P. 1988) (transfer pursuant to § 547(b)(4)(A) occurs on date when drawee bank honors check, although check was mailed 90 days pre-petition); *In re Global Distribution Network, Inc.,* 103 B.R. 949 (Bkrtcy.N.D. Ill.1989) (transfer occurs when bank honors check rather than upon issuance of check by Debtor); *Cimmaron Oil Company v. Schlumberger Well Services, Inc.,* 88 B.R. 103 (N.D.Texas 1987) (this opinion holds that a payment made by check does not occur until that check is actually presented to and honored by the drawee bank); *Matter of All American of Ashburn, Inc.,* 95 B.R. 251, 18 B.C.D. 1262, 20 C.B.C. 772 (Bkrtcy.N.D.Ga.1989) (for purpose of determining whether a transfer occurred within the preference period, the date of the transfer is the date the check was honored); *In re Sunup/Sundown, Inc.,* 65 B.R. 696 (Bkrtcy.S.D.Fla.1986) (court adopts the majority view which is that it is the time a check is honored which determines whether there is a preference, and not the date it is written and delivered).

Upon consideration of the facts herein, the court finds that the transfer occurred less than 90 days prior to the filing of plaintiffs' chapter 11 petition. Although the check is dated December 30, 1986, defendant admits it was not received until mid January, 1987, was not deposited until January 20, 1987, and, it appears, was not negotiated until January 21, 1987. Memo Contra, Exhibit 2 at 4–5; and Plaintiffs' Exhibit 4; Defendant's Exhibit D. Without regard to the date of the check's depositing or of its subsequent honoring, the transfer was made within 90 days of the filing of plaintiffs' petition.

 Lastly, regarding § 547(b), defendant asserts that because he basically is a fully secured creditor, no preference exists. Consolidated Trial Brief at 8. The court concurs in this conclusion. Section 547 is not applicable to fully secured creditors. *See In re C–L Cartage Co., Inc.,* 899 F.2d 1490, 1493 (6th Cir.1990) (payments to a creditor who is fully secured are not prefer-

ential since creditor would receive payment up to the full value of his collateral in a chapter 7 liquidation); *First Federal Savings & Loan v. Standard Building Associates,* 87 B.R. 221 (N.D.Ga.1988); *In re Hatfield Elec. Co.,* 91 B.R. 782, 786 (Bkrtcy.N. D.Ohio 1988) (the purpose of preference avoidance is not eroded by payments to fully secured creditors, since the estate is not thereby diminished); *In re Joe Flynn Rare Coins, Inc.,* 81 B.R. 1009 (Bkrtcy.D. Kan.1988) (generally, trustee cannot recover a pre-petition transfer or payment within 90 days to fully secured creditor because the transfer only reduces the secured debt and does not enable the secured party to receive more than in a chapter 7 liquidation).

Plaintiffs, at petition, owed defendant $142,000. *See* Debtors' Petition, Schedule A–2; Defendant's Exhibit F at 6. *But see* Debtors' Interrogatories to Secured Creditor at 4 ($153,360). Furthermore, defendant, in answering plaintiffs' interrogatories, claims the value of the property in issue, securing his debt, as of May 5, 1988, was $152,200. Defendant's Exhibit H. Plaintiffs assert that the value of this real estate as of May 23, 1988, was $110,800. Plaintiffs' Exhibit 5. The parties stipulated that, for purposes of determining defendant's secured claim as of the date of confirmation, the fair market value of the real estate was $134,000. Plaintiffs' Exhibit 3; Defendant's Exhibit C.

Pursuant to § 506(a), the value of defendant's interest in the estate's interest in the property mortgaged to defendant "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." That is, "the value of the secured party's interest depends on what it could do outside of bankruptcy to realize on its security." *Joe Flynn Rare Coins, Inc.,* 81 B.R. at 1021 (citations omitted).

Although the parties stipulated that, for purposes of confirmation, the value of the real estate in issue was $134,000, the court does not find this valuation binding as to the preferential issue. This figure represents negotiations between the parties,

compromising an objection to confirmation of plaintiffs' plan. The parties, obviously, did not intend this figure to be binding for all purposes.

As of May 5, 1988, the real estate securing defendant's claim may have been valued as high as $152,000. Defendant's Exhibit H. Plaintiffs have submitted an appraisal reflecting a value of $110,800 as of May 23, 1988. Plaintiffs' Exhibit 5. In light of the foregoing discussion, the court need not reach the issue of valuation. Although, as reflected by the record, the valuation of the real estate in issue does present a disputed fact, the court finds that this determination is not necessary for resolution of defendant's motion and adjudication of plaintiffs' complaint.

Finally, plaintiffs, on May 2, 1990, moved to substitute "Lynn A. Ruth and Jean A. Massima for Beaver Bricker" for the reasons that Mr. Bricker died on March 10, 1990. No response to that motion has been filed by defendant and the court finds that there is no reason to prohibit this substitution.

In light of the foregoing, it is therefore

ORDERED that plaintiffs' motion to substitute be, and it hereby is, granted. It is further

ORDERED that defendant's motion for summary judgment be, and it hereby is, granted. It is further

ORDERED that plaintiffs' complaint to recover preference be, and it hereby is, dismissed with prejudice.