In re H.R.P. AUTO CENTER,
INC., Debtor.

STATE OF OHIO, DEPARTMENT
OF TAXATION, Plaintiff,

v.

H.R.P. AUTO CENTER, INC., Defendant.

Bankruptcy No. B87–00170.

United States Bankruptcy Court,
N.D. Ohio, E.D.

Aug. 9, 1991.

Kenneth J. Freeman, Cleveland, Ohio, for plaintiff.

Mark Schlachet, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

The issues before the Court emanate from the Chapter 11 case of H.R.P. Auto Center, Inc. (HRP(2)), Case Number B87–00170. Specifically under consideration are (1) the motion of the State of Ohio, Department of Taxation (State) for dismissal or conversion of the Chapter 11 case and Debtor's response, (2) Debtor's motion to vacate unauthorized judgment entry and objection to claim with State's response, and (3) Debtor's amended counterclaim seeking damages and related relief for State's actions in a previous reorganization case and State's motion to dismiss and answer thereto. Debtor's motion for determination of tax liability under Section 505 of the United States Bankruptcy Code was withdrawn at trial. After trial and on consideration of the pleadings, evidence and relevant files the Court finds:—

HRP is an auto parts dealer selling wholesale and retail. Merchandise sold is subject to Ohio sales tax provisions. Harold M. Cohen is President and majority shareholder. HRP filed a petition for reorganization on May 11, 1977, Case Number B77–00735 (HRP 1). On September 16, 1977 the State filed a proof of claim for pre-petition sales tax for $112,569.68, Claim No. 164. (Exh. I). On September 30, 1977, State filed a proof of claim for $25,900.68 including sales tax of $18,792.44, Claim Number 168. Debtor objected to these claims. (Exh. 30; CS). Subsequent to negotiation, on October 11, 1977 the parties entered into a written agreement for payment of HRP's pre-petition sales tax liability. (Exh. N; Trans. 157–167, 354–365). The agreement set forth HRP's sales tax liability excluding penalty and interest as $90,569.13 for all periods prior to March 31, 1976, and approximately $21,870.55 for October, 1976 through May 10, 1977. It was agreed the State would not file a claim for penalty or interest but those items were not waived. (Exh. N).

Payment terms were delineated as follows:—

"2. The Debtor-in-Possession shall initially pay from the deposit the sum of Forty-five Thousand Dollars ($45,000.00), said payment being due within two (2) weeks of confirmation of the plan of reorganization. The approximate $18,000.00 to $19,000.00 now being held on the State of Ohio Attachment should either be refunded to Debtor-in-Possession at confirmation or be applied on the $45,000.00 payment.

3. The next payment for said sales tax shall be due six (6) months thereafter in the amount of Forty-five Thousand Dollars ($45,000.00).

4. Starting June 1, 1978, HRP shall make payments of One Thousand Dollars ($1,000.00) per month for five (5) consecutive months for said sales tax.

5. On November 1, 1978, HRP shall make the final payment for said sales tax

owed in the amount of Seventeen Thousand Five Hundred Sixty-nine and 68/100 Dollars ($17,569.68)."

(Exh. N, Sections 2, 3, 4, 5)

In addition, inter alia, the State was to receive a security interest in fixtures, inventory and equipment and HRP was required to file and pay all current sales taxes as they became due and owing. (Exh. N, Sections 14, 17). In the event HRP complied with the agreement a recommendation for compromise of penalty and interest was to be made to the sales tax commissioner. (Exh. N, Section 6). No deviation from the payment schedule was to be permitted without written permission from the State. (Exh. N, Section 7). Nonperformance of any condition constituted a material breach and the balance due would be immediately due and owing. (Exh. N, Section 19).

The plan of reorganization was confirmed by order of November 28, 1977. An order allowing Claim No. 164 as a Class 3 priority claim for $112,569.68 was entered January 4, 1978. (Exh. S). A previous order of October 24, 1978 disallowed Claim No. 168 based on the parties' agreement of October 11, 1977. The case was closed December 18, 1978.

The terms of agreement were not satisfied. The State received the initial $45,000 from the disbursing agent on January 4, 1978. (Exh. P, S; Trans. 368). The attachment proceeds, however, were not refunded to Debtor. (Trans. 171–172, 369). These funds totaling $17,667.03 were sent to the State by State's counsel. (Exh. X, Y, L1–L5; Trans. 369–370, 416, 422, 463–464). State never received the second $45,000 payment due six months after confirmation. (Trans. 175, 378, 416). It did, however, receive and accept substantial payments on a periodic basis from July to December of 1978. (Exh. Z; Trans. 174–176, 370–373). These payments totaling $32,161.52 were received by State's counsel. By the beginning of 1979, the State had received a total, including the execution proceeds, of only $94,828.55 in payment of its allowed claim. In addition, HRP failed to file or pay its current sales

tax during the term of the agreement. It did not pay sales tax for March of 1978 through September of 1979 until July 26, 1982. (Exh. 6; Trans. 106–107). This payment was finally made as the result of State's filing an order in aid of execution. (Exh. 6, DG; Trans. 285–286).

HRP paid the State an additional $28,-400.00 between January 1st and March 5th of 1980 in full payment of pre-petition sales tax liability (Exh. AH, AL, AM1–AM2, AN; TRANS. 383, 423–424). This sum represented the balance due under the agreement plus penalty and interest for HRP's late payment of sales tax obligations. (Exh. AE, AI, AN; Trans. 411–412). Including this payment, total payments on the pre-petition sales tax liability were $123,228.55. State made no demand for additional payment until the fall of 1979 when Debtor requested release of the financing statements. (Trans. 176–178, 374–375). HRP's payment of additional amount was disputed and motivated in part by the need to secure release of State's financing statements which impeded HRP's ability to obtain financing. (Trans. 178–180, 465). Request for and payment of this additional amount, however, was never questioned or disputed in the Bankruptcy Court until November 20, 1990 when HRP filed its counterclaim to State's motion to dismiss or convert the second reorganization case. (Trans. 344–345, 347–348).

On June 15, 1981, HRP filed a claim for refund with the State asserting overpayment of pre-petition sales tax. (Exh. 37, AU; Trans. 430, 446–452). Hearing was held November 18, 1981, and on March 24, 1982 the State Tax Commissioner denied the application for refund. (Exh. AW, AX). Debtor did not appeal this ruling. (Exh. AX). Cohen subsequently attempted to raise the overpayment issue in the context of a corporate officer assessment. (Exh. 38, 39, DN; Trans. 344–345, 438–457).

On January 20, 1987 HRP filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code, Case No. B87–00170 (HRP 2). The law firm of Sindell, Rubenstein, Einbund, Pavlik and Novak was retained as counsel. HRP did not

disclose existence of any potential claim against the State in its petition and schedules. Initially the State filed Claim No. 54 in the amount of $5,114.32. On January 25, 1988 State filed Claim No. 72 for $144,372.47. (Exh. BT; Trans. 108–109, 213–216). On June 30, 1988 it filed a supplemental claim of $161,827.63, Claim No. 75. (Trans. 117). The State's claim was the largest in the case. (Exh. 2; Trans. 59, 340).

On April 29, 1988 HRP filed a disclosure statement and plan of reorganization. (Exh. 2, 40). Disclosure statement contained the requisite discussion of Debtor's financial condition and indicated the best estimate of outstanding liability to the State was $144,372.47. This amount was not shown to be disputed. (Exh. 2, Section VI; Trans. 57–58). The claim was classified as a Class 2 priority tax claim. Payment was to be in semi-annual installments over a six year period with interest on unpaid balance at the statutory rate set forth in 26 U.S.C. § 6621(b). (Exh. 40, Article III, Section 3.2). Payment on allowed Class 2 claims were to be May 30th and November 30th each year following effective date of the plan. (Exh. 40, Article III, Section 3.2). Effective date of the plan is defined as 30 days following confirmation date. (Exh. 40, Article I, Section 8). HRP did not disclose existence of any potential claim against the State in the disclosure statement or plan. Disclosure statement was approved June 10, 1988; plan of reorganization was confirmed July 19, 1988.

HRP objected to State's Claim Nos. 54, 72 and 75 post-confirmation on August 24, 1988. Objection was prepared by Michael Tucker, an associate in the Sindell firm. (Exh. DJ; Trans. 302–303). Objection to Claim Nos. 54 and 72 was premised on their being unsupported by Debtor's books and records. Claim No. 75 was alleged to be a duplicate of Claim No. 72. The asserted overpayment of sales tax in HRP(1) was not raised or discussed in connection with the objection to claim. (Exh. DJ; Trans. 345–346, 470–479, 483–494).

Claim No. 72 stated amounts due for withholding tax and franchise tax totaling $4,047.60. This tax obligation neither was nor is disputed. It also asserted amounts due for unpaid sales tax totaling $140,324.87. The claim represented 20 assessments, 14 of which were forced assessments precipitated by HRP's continuing failure to file timely sales tax returns. (Exh. 6; Trans. 106–108, 215). Indicated on the claim were post-petition judgments taken in violation of Section 362 automatic stay provisions. 11 U.S.C. § 362. These judgments are void, but there is no indication they were obtained in willful violation of the stay provisions. (Exh. BT; Trans. 146–150, 211–250). Claim No. 72 was prepared by State's special counsel, Paul McParland, from printouts obtained from the Ohio Attorney General's office in January of 1988. (Exh. 31, 32, DA, DC, DI; Trans. 108, 109, 287–288). The proof of claim on file in the Bankruptcy Court contains no page 5 which delineates five specific assessments. (Trans. 288–289).

On September 20, 1988, State filed an adversary proceeding seeking revocation of the order confirming HRP's plan of reorganization, Adversary No. B88–0432. Revocation was requested because of Debtor's misrepresentations of payment of post-petition taxes. The order of confirmation was allegedly based on these fraudulent misrepresentations.

Negotiation and discussion of the State's claim and payment of Debtor's post-petition sales tax occurred in the fall and winter of 1988. Discussion focused solely on HRP's pre-petition sales tax obligations in connection with the objection to claims, and post-petition sales tax obligations were the focus of the adversary proceeding. (Exh. 33, 34, 35, 36, BX, BY, BZ, CA; Trans. 110–114, 302–325, 340–341). Although HRP was represented by counsel in these matters, Harold Cohen was knowledgeable of the issues and responsible for negotiations. (Exh. CC; Trans. 323, 327–328). On Debtor's request, State's counsel obtained updated printouts indicating HRP's pre-petition sales tax liability in January of 1989. (Exh. 7–23; Trans. 116–117, 343). A meeting was conducted January 10, 1989 and

attended by State's counsel, Michael Tucker and Harold Cohen. Cohen and Tucker were provided copies of the updated sales tax information. (Trans. 117–118, 132, 324, 343).

A subsequent meeting of January 27, 1989 was attended by the same individuals. (Trans. 118–119, 132–134, 309–324, 343–344). At that time, Cohen agreed with the State's figures concerning pre-petition tax due, with one exception. He maintained there was possible duplication of assessments for the years 1983 and 1984. He returned the printouts to State's counsel with comments thereon reflecting his agreement with the taxes indicated. (Exh. 7–23, 24, CA; Trans. 134, 261–262, 323–327). State's counsel subsequently investigated and satisfied the concern of possible duplication of assessments. (Exh. CD; Trans. 134–135).

Agreement was reached for allowance of State's claim in February of 1989. In a telephone conversation with State's counsel, Cohen agreed to payment of the claim for $144,372.47 pursuant to the confirmed plan. (Trans. 58–59, 136–141, 332–335). Exhibit 29 is State counsel's notes outlining this conversation and delineating terms of agreement. HRP's counsel prepared and signed a judgment entry reflecting the agreement. Judgment was filed by counsel and entered February 23, 1989. (Exh. A; Trans. 58–59, 136–141, 332–344). The judgment entry indicated objection to Claim No. 72 was overruled and sustained as to Claim Nos. 54 and 75. The entry was signed by Thomas C. Pavlik as attorney for Debtor. Pavlik took over the HRP file upon Tucker's departure from the firm on February 7, 1989. (Exh. CF, CG; Trans. 136, 332–335). Discussion between the parties from this date on pertained solely to the post-petition tax issue. (Exh. CE, CF). Additionally, the State continued to inquire about Debtor's establishing a fund for payment on the allowed claim. (Exh. CE, CF).

Cohen asserts the February 23, 1989 entry was unauthorized and he was unaware of it until July of 1990. (Trans. 331–351). Indeed, he claims not to have seen the entry until the date of trial. In view of the magnitude, significance and importance of the State's claim to the reorganization and Cohen's active hands-on participation in the intense settlement negotiations, this testimony is inconceivable and totally incredible. Cohen and counsel met and discussed the State's claim numerous times and it was Cohen who was responsible for negotiating. (Exh. CC). Absence of inquiry regarding status of the State's claim after February of 1989 is wholly consistent with settlement having been achieved. In addition it is worthy of note that Pavlik continued to represent HRP in the confirmed case. (Exh. CG and Case No. B87–00170 file). There were no discussions between HRP or Cohen and the State concerning the proof of claim from February 22, 1989 to July 25, 1990. HRP made no payment to the State on the claim during this period. Since then several payments have been made toward pre-petition sales tax liability. (Trans. 241–244). Cohen made a $4,361.89 payment which was credited to that liability. Additional sums were paid by or credited to HRP in 1990; namely, $5,500.00 in August, $12,039.00 in September and $13,-000.00 in November.

## JURISDICTION

The issues for decision result from HRP's continual failure to file sales tax returns and to pay sales tax. This failure caused substantial Ohio sales tax obligations in its first and second reorganization. Article VI, Sections 6.1(c) and (d) of the latter confirmed plan provide for retention of jurisdiction to determine controversies arising from the plan and to effectuate performance thereunder. Issues in the State's motion to dismiss or convert and in Debtor's motion to vacate judgment entry and objection to claim are core proceedings in HRP(2) within the jurisdiction of this Court. 28 U.S.C. §§ 1334(a), (b), 157(b)(2)(B), (b)(2)(L), (b)(2)(O). State challenges jurisdiction of the amended counterclaim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Bankr. R.Civ.Proc. 7012. The counterclaim alleges State's improprieties in pursuing the sales tax claim in HRP(1). Dismissal is requested for untimeliness and failure to success-

fully pursue state remedies. This is a core proceeding under Section 157(b)(2)(C) of Title 28 since it is the estate's counterclaim against the State which filed a claim in the second reorganization. Moreover, issues regarding the first reorganization are raised in the pending Chapter 11 case. Debtor is not per se challenging the State tax assessment, but asseverates over-reaching regarding payment of State's claim in HRP(1). Determining the counter-claim involves consideration of the Chapter 11 administration, allowance of State's claim and adjustment of this debtor-credi-tor relationship, all solely bankruptcy is-sues for which retention of jurisdiction is provided in Article VI, Sections 6.1(a), (c), (d) and (f) of the plan. The counterclaim is a core proceeding within this Court's juris-diction. 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(B), (b)(2)(C), (b)(2)(O). Jurisdiction is not de-feated merely because HRP may fail on the merits of its claim due to untimeliness or other substantive basis. Validity of the counterclaim is appropriately addressed on the merits rather than on jurisdiction. State's motion to dismiss on jurisdictional grounds is, therefore, denied.

## I. AMENDED COUNTERCLAIM

The Amended Counterclaim alleges the State violated the October 11, 1977 agree-ment for payment of pre-petition sales tax in HRP(1). Requested relief includes com-pensatory damages of $144,086.60, punitive damages of $288,173.20, subordination of State's claim and sanctions. Specifically, it is alleged the State coerced overpayment of its claim in that case and collected penalty and/or interest in violation of the agree-ment and injunctive provisions of Debtor's discharge in HRP(1).

The State denies overpayment and impro-prieties. Various defenses are posed in-cluding estoppel, waiver and laches, un-timeliness pursuant to the Federal Rules of Civil Procedure, Debtor's fraudulent acts and failure to comply with terms of agree-ment. Dismissal of the counterclaim with prejudice and attorney fees and costs are sought.

Debtor failed to disclose any potential claim against the State in HRP(2). Petition and schedules reflect no alleged over-payment. Approved disclosure statement and confirmed plan are devoid of a poten-tial claim or anticipated litigation with the State. The potential claim as quantified in the amended counterclaim would be the single largest asset in the estate. Other possible litigation is specifically discussed. The State's claim is the largest in the case. Agreement was reached thereon along with post-petition taxes without prior over-payment being mentioned. This agreement resulted from a vigorous contest of Debt-or's objection to claims and request for revocation of confirmation. The alleged overpayment occurred early in 1980, was unsuccessfully contested with the tax com-missioner until 1982 and was not asserted again until the summer of 1990 in response to State's motion to dismiss or convert. This series of facts clearly precludes HRP's pursuit of the amended counter-claim.

 "A long-standing tenet of bank-ruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule for the benefit of creditors all his interests and property rights." *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 (3d Cir.1988) cert. denied 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). Confirmation of a plan of reorganization precludes attempts to re-litigate matters which could have been raised in the bankruptcy proceeding. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). Specifically, Section 521 of the Bankruptcy Code requires a debtor to file a schedule of assets and liabilities and a statement of financial affairs. 11 U.S.C. § 521(1). Section 1125 prescribes a Chapter 11 debtor's duty to file a disclo-sure statement containing "adequate infor-mation" as a requisite step in obtaining confirmation of its plan of reorganization. 11 U.S.C. § 1125. "Adequate information" includes disclosure of likely litigation. *Monroe County Oil Co. v. Amoco Oil Co.,* 75 B.R. 158 (D.C.S.D.Ind.1987). Failure to disclose potential litigation precludes its subsequent prosecution. *Oneida Motor*

*Freight,* supra, *Galerie Des Monnaies of Geneva Ltd. v. Deutsche Bank,* 55 B.R. 253 (Bankr.S.D.N.Y.1985) aff'd. 62 B.R. 224 (D.C.S.D.N.Y.1986), *Monroe County Oil Co.,* supra, *Hoffman v. First National Bank of Akron, Iowa,* 99 B.R. 929 (D.C.N.D. Iowa 1989), *Pako Corp. v. Citytrust,* 109 B.R. 368 (D.C.D.Minn.1989). Debtor's failure to disclose or assert its overpayment claim against the State in the pending reorganization violates its Chapter 11 duties and precludes assertion at this time under various theories.

### A) Equitable Estoppel

■ Application of equitable estoppel must be based on (1) conduct or language amounting to a representation of material facts, (2) the party to be estopped must be aware of the true facts, (3) the party to be estopped must intend that the representation be acted on or must act in such manner that the party asserting the estoppel has a right to believe it so intended, (4) the party asserting the estoppel must be unaware of the true facts and (5) the party asserting the estoppel must detrimentally and justifiably rely on the representation. *Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210 (6th Cir.1987), cert. den. 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987). *Hoffman v. First National Bank of Akron, Iowa,* 99 B.R. 929 (D.C.N.D. Iowa 1989).

Debtor is equitably estopped from asserting the amended counterclaim. Existence of a potential claim for overpayment of sales tax was concealed in HRP(2). Failure to disclose the claim was a material omission in violation of HRP's duty to disclose. Harold Cohen, Debtor's president and majority shareholder, clearly had knowledge of this substantial, potential claim. The State and other creditors were unaware Debtor perceived a potential claim for overpayment and were justified in relying on the disclosure statement, petition and schedules which failed to reveal the claim. Moreover, the State and other creditors detrimentally relied on the misrepresentation in deciding on Debtor's plan of reorganization. The State specifically relied on the misrepresentation in settling litigation of its claims and Debtor's post-petition sales tax liability.

### B) Judicial Estoppel

■ Judicial estoppel is an equitable doctrine governed by general equitable principles. The doctrine "protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 472 (6th Cir.1988). Statements or omissions by a Debtor in its disclosure statement provide an appropriate basis for imposition of a judicial estoppel. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 (3d Cir.1988); *In re Galerie Des Monnaies of Geneva, Ltd.,* 55 B.R. 253 (Bankr. S.D.N.Y.1985).

Debtor's pursuit of the alleged overpayment at this late date is inconsistent with the position taken during reorganization. Omission of the potential claim from the petition, schedules and disclosure statement as well as its prosecution of the State's claim precludes assertion of the amended counterclaim. Debtor was aware of the potential claim during pendency of reorganization but has failed to provide any cogent reason for its omission. HRP's failure to list this potential asset and subsequent attempt to allege the overpayment defensively in response to the State's motion to dismiss or convert, compromises the integrity of the reorganization process.

### C) Laches

■ Laches is an equitable doctrine which bars an action based on a party's unexcused or unreasonable delay which has prejudiced his adversary. *Ruiz v. Shelby County Sheriff's Department,* 725 F.2d 388 (6th Cir.1984), cert. den. 469 U.S. 1016, 105 S.Ct. 428, 83 L.Ed.2d 355 (1984). HRP was aware of its potential claim for overpayment in 1980. It disputed the matter with the tax commissioner but failed to appeal the 1982 adverse ruling on its application for refund. HRP(2) was filed, the

plan of reorganization confirmed and State's claim and adversary proceeding, both involving sales tax issues, were prosecuted without Debtor's asserting the overpayment. Two years after plan confirmation, Debtor raised the overpayment issue defensively in response to State's motion for dismissal or conversion. Debtor's actions clearly constitute unreasonable delay. Prejudice to the State and the integrity of the bankruptcy proceeding would result if HRP were permitted to proceed with the amended counterclaim.

### D) Federal Rules

■ State argues Debtor's failure to file and prosecute its claim for overpayment is barred under the Federal Rules of Civil Procedure. The claim is said to be a compulsory counterclaim required to have been litigated in HRP(1) or prior to confirmation of plan in HRP(2). This argument is without merit. HRP(1) was closed in December of 1978 and disputed payment did not occur until 1980. There was, therefore, no proceeding in HRP(1) requiring prosecution of the claim for overpayment. In HRP(2) the claim for overpayment was clearly an asset to be scheduled and disclosed. It is not, however, an action which Debtor was required to assert in the reorganization case. Ideally it should have been raised in the context of Debtor's objection to the State's claims. The Bankruptcy Rules do not, however, require assertion of compulsory counterclaims on objection to claims. Bankr.R. 3007, 9014.

### E. Conclusion

Discussion of other defenses raised by the State is unnecessary. Consideration of the parties' performance under the agreement is obviated by the determination that Debtor is barred from asserting the counterclaim pursuant to equitable estoppel, judicial estoppel and laches. HRP's amended counterclaim is, therefore, dismissed with prejudice. State's request for award of fees and costs is denied.

### II. RELIEF FROM JUDGMENT

■ Pursuant to Rule 60(b)(6), HRP seeks relief from judgment entry of February 22, 1989 overruling objection to Claim No. 72 in HRP(2). Fed.R.Civ.P. 60(b)(6) incorporated pursuant to Bankruptcy Rule 9024. It is also suggested that recourse to this rule is unnecessary and the matter should be considered as a motion for reconsideration of claim pursuant to Section 502(j) of the Bankruptcy Code. 11 U.S.C. § 502(j). Essentially Debtor requests relief from the judgment maintaining it was submitted by counsel without authority.

■ Section 502(j) provides for reconsideration of an allowed or disallowed claim for cause. "A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j). Reference to Rule 60 of the Federal Rules is appropriate on motions for reconsideration. *United States v. Motor Freight Express*, 91 B.R. 705 (Bankr.E.D.Pa.1988); *Pollack v. Federal Deposit Insurance Corp.* (In re Monument Record Corp.) 71 B.R. 853 (Bankr.M.D.Tenn.1987). Rule 60(b)(6) provides for relief for "any other reason justifying relief from the operation of the judgment." The burden is on HRP as movant to bring itself within the scope of these provisions. *Miller v. Owsianowski* (In re Salem Mortgage Co.) 791 F.2d 456 (6th Cir.1986).

■ On consideration there is no basis for relief from the judgment entry and thus for reconsideration of allowance of State's claim. Debtor failed to establish the judgment entry was unauthorized. There is, therefore, no cause for reconsideration pursuant to Section 502(j) and no reason justifying relief under Rule 60(b)(6). Moreover, if Debtor's allegations regarding the judgment entry were credible, its failure to monitor prosecution of objection to the State's claim from February 1989 to July 1990, a period of seventeen months, would preclude requested relief. This failure reflects lack of diligence in monitoring and administering the plan of reorganization, thereby precluding a finding of cause or justification for relief from the judgment.

## CONCLUSION

Debtor's motion to vacate judgment and objection to State's claim in HRP(2) is denied. State's motion to dismiss this pleading on jurisdictional grounds is denied.

## III. MOTION FOR DISMISSAL OR CONVERSION

■ The State requests dismissal or or conversion of HRP(2) pursuant to Section 1112(b)(8) of the Bankruptcy Code for Debtor's failure to make payments according to the confirmed plan. This section provides:—

> "(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including ...
>
> (8) material default by the debtor with respect to a confirmed plan ...

11 U.S.C. § 1112(b)(8)

State alleges payment was due from Debtor pursuant to the plan on November 30 of 1988. In actuality plan payments to Class 2 priority claimants were based on claim allowance. State's claim was not allowed until February of 1989. First payment to the State under the plan, therefore, was due May 30, 1989. Neither this payment nor subsequent payments were made. Failure to make plan payments on May 30, 1989, November 30, 1989 and May 30, 1990 is a material default of the confirmed plan and cause for dismissal or conversion of the Chapter 11 case.

■ Case dismissal or conversion on a finding of cause is submitted to the sound discretion of the Court. *In re Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir. 1985). Nothing in Section 1112(b) requires either dismissal or conversion. *Fruehauf Corp. v. Jartran, Inc.,* 886 F.2d 859 (7th Cir.1989). State's briefs herein request conversion rather than dismissal, but fail to discuss why the former would best serve the interests of creditors and the estate.

The relative benefit of dismissal or conversion depends on the resulting effect in a given case. Interpretation of Bankruptcy Code provisions pertaining to post-confirmation issues is in the formative stages. See generally Lander and Warfield, *A Review and Analysis of Selected Post–Confirmation Activities in Chapter 11 Reorganization,* 62 Am.Bankr.L.J. 203 (1988).

The effect of conversion in a confirmed Chapter 11 case is not clearly delineated by the Bankruptcy Code. For this determination reference to various applicable Code sections is required. Confirmation of a plan vests all property of the estate in the debtor, absent a contrary plan provision. 11 U.S.C. § 1141(b). *Kepler v. Independence Bank of Madison* (In re Ford), 61 B.R. 913 (Bankr.W.D.Wis.1986). The bankruptcy estate, therefore, ceases to exist upon confirmation. Terms of the plan discharge pre-confirmation debt and substitute the obligations set forth in the plan. 11 U.S.C. § 1141(a), (d). A confirmed plan does not become ineffective by debtor's failure to comply with its terms. Moreover, post-confirmation conversion does not render payments made thereunder voidable. *In re Ford,* supra.

■ Section 348 details the effect of conversion. Section 348(a) states:—

> "(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."

11 U.S.C. § 348(a)

Pursuant to this section, conversion does not effect a change in the date of the filing, commencement of case or order for relief. Post-confirmation conversion, therefore, does not create a new estate or convert property of the debtor into property of the estate. *In re T.S.P. Industries, Inc.,* 117 B.R. 375 (Bankr.N.D.Ill.1990), motion to amend denied, 120 B.R. 107 (Bankr.N.D.Ill. 1990). Conversion does not reimpose auto-

matic stay provisions of Section 362. 11 U.S.C. § 362. *British Aviation Insurance Co. Ltd. v. Menut* (In re State Airlines, Inc.), 873 F.2d 264 (11th Cir.1989). Trustee's status as a hypothetical lien creditor for purposes of Section 544 is determined at the original filing not the date of conversion. *General Electric Credit Corp. v. Nardulli and Sons, Inc.*, 836 F.2d 184 (3d Cir.1988). The 90 day preference period under Section 547 is calculated from the Chapter 11 filing, not the date of conversion. *Vogel v. Russell Transfer, Inc.*, 852 F.2d 797 (4th Cir.1988).

Conversion of a confirmed chapter 11 case should not be "... used as a fishing expedition, especially when the lake looks so barren. The mere possibility that a claim might be found is not reason enough to convert a case ..." *In re T.S.P. Industries, Inc.*, 120 B.R. 107, 111 (Bankr. E.D.Wis.1990). Absent a plan provision requiring conversion upon default, viable avoidance actions or other valid reason, post-confirmation conversion is not in the best interest of creditors. *T.S.P. Industries*, supra. Post-confirmation conversion of an entity which has operated any extent of time under a confirmed plan would result in administrative problems and would consume resources that could otherwise benefit creditors. *In re Jartran, Inc.*, 71 B.R. 938, (Bankr.N.D.Ill.1987), aff'd 87 B.R. 525 (D.C.N.D.Ill.1988), aff'd 886 F.2d 859 (7th Cir.1989).

Debtor operated for three years under the confirmed plan and made requisite payments. The plan makes no provision for conversion in the event of default. Potential avoidance actions would appear to be foreclosed due to the time which has elapsed. There is no evidence conversion will benefit creditors. It clearly will not result in creation of an estate. Moreover, conversion will cause delay and incurrence of administrative expenses which may never be paid. Dismissal, on the other hand, will benefit creditors by enabling their pursuit of available remedies.

## CONCLUSION

Debtor's failure to make required plan payments to the State is a material default with respect to the confirmed plan and is cause for dismissal of HRP(2). Dismissal is in the best interest of creditors and the estate. Dismissal is, therefore, ordered pursuant to Section 1112(b)(8) of Title 11 of the Bankruptcy Code.