**In re Steven E. WALLS, Debtor.**

**Frederick M. LUPER, Trustee in Bankruptcy for Steven E. Walls, Plaintiff,**

v.

**SOUTHEASTERN EQUIPMENT CO., INC., Defendant.**

Bankruptcy No. 2–86–02633.
Adv. No. 2–86–0262.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 8, 1988.

Frederick M. Luper, Columbus, Ohio, for plaintiff.

Patrick F. Timmins, Jr., Columbus, Ohio, for defendant.

## OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court upon the Motion For Summary Judgment filed by the plaintiff, Frederick M. Luper, the trustee for the Estate of Steven E. Walls, the debtor in a voluntary Chapter 7 case pending before the Court (Case No. 2–86–02633) ("Trustee"), and the memorandum *contra* filed by Southeastern Equipment Co., Inc. ("Southeastern"). Jurisdiction of this proceeding is vested in the Court pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (2)(F).

On October 14, 1986, the Trustee filed a complaint against Southeastern seeking the avoidance of an alleged preferential transfer. According to the Trustee, within 90 days of the date debtor filed his voluntary Chapter 7 petition, certain equipment allegedly valued at $5,099.03 was returned by the debtor to Southeastern. The return of the equipment to Southeastern, the Trustee argues, constitutes a preferential transfer which is subject to avoidance pursuant to 11 U.S.C. § 547(b). Southeastern asserts

that no preferential transfer within the meaning of 11 U.S.C. § 547(b) occurred in this case and, therefore, that the motion for summary judgment should be DENIED.

## II. *Factual Background*

The parties have filed an "Agreed Statement of Facts" ("Stipulations") which the Court hereby adopts as the undisputed facts upon which the instant summary judgment motion is based. The Stipulations between the parties are set forth below *verbatim:*

1. Southeastern Equipment Co., Inc. is a corporation in good standing, organized under the laws of the State of Ohio, whose principal office is located in Guernsey County, Ohio, and has a branch office located in Dublin, Franklin County, Ohio.

2. Southeastern Equipment Co., Inc. (hereinafter referred to as "Southeastern") sold Steven E. Walls (hereinafter referred to as "Walls") a new Allied Ho–Pac, Model 8700C, hydraulic vibratory compactor (hereinafter referred to as "hydraulic compactor") with a basic hydraulic installation kit on January 16, 1986, for $6,599.03 including Ohio sales tax.

3. A true copy of Sales Contract No. 23627—marked Southeastern's Exhibit A—concerning the sale of the hydraulic compactor and basic hydraulic installation kit which document was executed on January 16, 1986, by both Walls and the Dublin, Ohio, Branch Manager of Southeastern, is attached hereto and made a part hereof.

4. Walls paid Southeastern the sum of $1,500.00 on or about February 12, 1986, as the downpayment in connection with the sale of the hydraulic compactor and basic hydraulic installation kit. The balance due of $5,099.03 was considered between Southeastern and Walls as an installment credit sale on an open account.

5. A true copy of Invoice No. M–4 16088, dated February 12, 1986, concerning the $5,099.03 balance due which was mailed to Walls by Southeastern, is attached hereto—marked Southeastern's Exhibit B—and made a part hereof.

6. On or about February 12, 1986, Walls took possession of the hydraulic compactor and basic hydraulic installation kit pursuant to the terms set forth in Sales Contract No. 23627.

7. On June 10, 1986, Walls returned the hydraulic compactor to Southeastern because he did not, and could not, make the required installment payments.

8. Walls did not, and has not, returned the basic hydraulic installation kit to Southeastern.

9. On January 16, 1986, and on June 10, 1986, the basic hydraulic installation kit with other mounting parts sold for $1,287.85, exclusive of sales tax.

10. On June 18, 1986, Southeastern issued a credit to Walls for the sum of $5,099.03, being $4,833.20 plus $265.83 in Ohio sales tax. The sum of $5,099.03 reflects 100% of the then unpaid balance due on the hydraulic compactor and the basic hydraulic installation kit.

11. A true copy of Credit Memo No. M–4 16381, dated June 18, 1986, concerning the issuance of the $5,099.03 credit, which was mailed to Walls by Southeastern, is attached hereto—marked Southeastern's Exhibit C—and made a part hereof.

12. On June 17, 1986, Southeastern rented the hydraulic compactor, exclusive of the basic hydraulic installation kit, to Cooper Construction, Inc. of Ashland, Ohio, for the period from June 17, 1986, through June 24, 1986, at the sum of $500.00.

13. A true copy of Invoice No. M–4 16382, dated June 19, 1986, concerning the $500.00 rental which was

mailed to Cooper Construction, Inc. by Southeastern, is attached hereto—marked Southeastern's Exhibit D—and made a part hereof.

14. Cooper Construction, Inc. returned the hydraulic compactor to Southeastern at the end of the rental period on June 24, 1986.

15. Southeastern sold Cooper Construction, Inc. the hydraulic compactor without the basic hydraulic installation kit on July 3, 1986, for $4,333.20 exclusive of Ohio sales tax since Cooper Construction, Inc.'s Ohio sales tax exemption certificate was applicable in this sale.

16. On July 3, 1986, Cooper Construction, Inc. took possession of the hydraulic compactor from the Dublin, Ohio, premises of Southeastern.

17. A true copy of Invoice No. M–4 16437, dated July 8, 1986, concerning the $4,333.20 sale of the hydraulic compactor which was mailed to Cooper Construction, Inc. by Southeastern, is attached hereto—marked Southeastern's Exhibit E—and made a part hereof.

18. On July 9, 1986, Walls filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division.

### III. *Discussion*

The parties agree that there are no disputed issues of material fact, with the exception of the question of the value of the hydraulic compactor as of June 10, 1986. Accordingly, this matter is ripe for a decision upon summary judgment. *See*, Bankruptcy Rule 7056.

The sole legal question before this Court for decision is whether the return of the hydraulic compactor on June 10, 1986, constituted a voidable preference under 11 U.S.C. § 547(b). Section 547(b) of the Bankruptcy Code provides in relevant part:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor,

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; and

. . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Relying upon the above section of the Code, the Trustee asserts that the transfer in question satisfies each and every element of § 547(b), thereby making the transfer an avoidable preference. Southeastern has made several rejoinders to the Trustee's argument; however, none of Southeastern's legal contentions are supportable.

The Stipulation establishes that a transfer of an interest of the debtor in property occurred on June 10, 1986, when the hydraulic compactor was returned by the debtor to Southeastern. "Transfer" is defined in 11 U.S.C. § 101(50) as every mode of parting with property or with an interest in property. *In re A.J. Nichols, Ltd.*, 21 B.R. 612, 614 (Bankr.N.D.Ga.1982). Hence, the threshold requirement of an avoidable preference has been established by the Trustee.

The second requirement which must be established in order to recover an avoidable preference is that the transfer in question must be shown to have been for, or on account of, an antecedent debt owed by the debtor before the transfer was made. Paragraphs 3 and 4 of the Stipulation clearly satisfy this requirement. The third and fourth requirements of § 547(b) likewise have been satisfied. The debtor's insolven-

cy at the time the transfer in question was made is undisputed. Further, while Southeastern argues, inexplicably, that the subject transfer occurred outside the 90–day preference period, paragraph 7 of the Stipulation directly refutes this contention.

The only colorable assertion made by Southeastern which, if established, would preclude the Trustee's avoidance of the transfer, is the contention that Southeastern did not receive more than it would have in a Chapter 7 liquidation by virtue of the transfer. According to Southeastern, it was a secured creditor under Ohio law. Hence, Southeastern argues it received no more· through the return of the hydraulic compactor than it would have received in a Chapter 7 liquidation, viz., return of its collateral. Southeastern's argument is fallacious. Southeastern concedes that it failed to perfect its security interest in the hydraulic compactor and the hydraulic installation kit by filing a financing statement with the appropriate state authorities as required by Ohio Revised Code ("O.R. C.") § 1309.38(A)(3). However, according to Southeastern, it obtained secured status by virtue of the security agreement which it executed with the debtor on January 16, 1986. Southeastern takes great pains to point out in its memorandum *contra* to the Trustee's summary judgment motion that it met all the conditions necessary to acquire a valid security interest in the hydraulic compactor and hydraulic installation kit. However, Southeastern's argument confuses the legal principles of attachment and perfection of a security interest. There is no doubt that the sales contract referred to in paragraph 3 of the Stipulation created a security interest in Southeastern. However, Southeastern's failure to file a financing statement with respect to such equipment, as is required by Ohio law, results in Southeastern occupying the status of an unsecured creditor as of the time the transfer in question occurred. As an unsecured creditor in this Chapter 7 liquidation proceeding, Southeastern would have received no distribution. Because the transfer to Southeastern allowed it to recover the entire amount of its claim, and because the defendant did not have a perfected security interest in the returned equipment, Southeastern clearly received more than it would have under a Chapter 7 liquidation if the transfer had not been made.

Hence, for the above-stated reasons, the Court finds that the Stipulation, as well as the pleadings on file, establish that the Trustee has carried his burden of proof with respect to each element of 11 U.S.C. § 547(b). Hence, the Trustee is entitled to summary judgment with respect to the issue of whether the transfer of the hydraulic compactor to Southeastern constituted an avoidable preference.

■ Having determined that the transfer in question is an avoidable preference, an issue remains with respect to the value realized by Southeastern as a result of such preference. The Trustee argues that the hydraulic compactor should be valued at no less than $5,099.03, the amount of the credit extended to the debtor upon return of the equipment. Southeastern responds in the following manner:

Southeastern takes strong exception that Trustee Luper is entitled to be awarded any sum near ,the amount of $5,099.03 plus "... pay all legal interest ..." thereon for the following reasons:

(1) Walls has never returned to Southeastern the purchase money secured basic hydraulic installation kit which sold for the sum of $1,287.85 both in January, 1986, and in June, 1986, (see Items No. 2, No. 8 & No. 9 of the Agreed Statement of Facts);

(2) Trustee Luper, in the opinion of Southeastern, would not presently realize the net sum of $5,099.03 from a Trustee's sale of said hydraulic compactor (see Southeastern's affidavit filed on March 30, 1987, in the instant adversary proceeding); and

(3) Southeastern should receive a credit equal to 10% of the gross amount that would be realized at a Trustee's sale of said hydraulic compactor as a broker's fee plus an allowance for all costs that would be incurred in preparing said hydraulic compactor and conducting said Trustee's sale of it.

Memorandum Contra Motion for Summary Judgment at 5.

As the foregoing excerpt from Southeastern's memorandum *contra* reflects, Southeastern has filed the affidavit of Edwin L. Duncan, its branch manager, who has opined that the reasonable market value of the hydraulic compactor as of June 10, 1986, would not exceed $3,500. According to Duncan's affidavit, a 10% broker's fee would customarily be paid for the sale of such equipment. Based upon the affidavit filed by Southeastern, as well as the other pleadings on file, it is apparent that a genuine issue of material fact exists with respect to the value of the hydraulic compactor at the time the avoidable transfer occurred. Hence, it is not appropriate for the Court to resolve the issue of the value of the preferential transfer by way of summary judgment. Accordingly, the Court hereby GRANTS the Trustee's motion for summary judgment in part and DENIES such motion in part. The Court finds that the transfer of the equipment by the debtor to Southeastern constitutes an avoidable preference within the meaning of 11 U.S.C. § 547(b). However, a factual issue exists regarding the value of the property returned to Southeastern which must be determined at trial.

IT IS SO ORDERED.