In re Bill Patrick CHAMBERS, Debtor.

Norman E. ROUSE, Trustee, Plaintiff,

v.

PINEGAR CHEVROLET, INC., Defendant and Third–Party Plaintiff,

v.

BOATMEN'S FIRST NATIONAL BANK OF SPRINGFIELD, Third–Party Defendant.

Bankruptcy No. 90–30218–7–SW.
Adv. No. 90–3037–7–SW.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

April 2, 1991.

Norman E. Rouse, Joplin, Mo., for plaintiff.

Kevin Checkett, Carthage, Mo., for defendant and third-party plaintiff.

Mark Haseltine, Springfield, Mo., for third-party defendant.

Joseph D. Woodcock, Aurora, Mo., for debtor.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT PINEGAR CHEVROLET, INC., AND GRANTING MOTION TO DISMISS THIRD–PARTY DEFENDANT

ARTHUR B. FEDERMAN, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the complaint filed by the Chapter 7 Trustee on November 13, 1990. Oral argument on the motion for summary judgment filed by defendant Pinegar Chevrolet, Inc. was heard on December 21, 1990, at which time the parties agreed that the Court could treat the dispute as cross motions by both the Trustee and Pinegar for summary judgment.[1] The parties subsequently agreed that in addition to the pleadings filed in connection with the motion for summary judgment, the Court could consider the exhibits filed by the Trustee on December 7, 1990. Thereafter, on February 8, 1991, Pinegar requested and obtained leave to add Boatmen's First National Bank as a Third–Party Defendant. Boatmen's has now filed motions to dismiss and abstain as to the third-party complaint. Based upon the reasoning stated below, the Court sustains the motion of the Trustee–Plaintiff for summary judgment, denies the motion of Defendant Pinegar for summary judgment, and grants the motion of Boatmen's to dismiss the third-party complaint.

1. The original complaint named both Pinegar Chevrolet, Inc. and the debtor as defendants. However, at the hearing held on December 21, 1990, the Trustee dismissed the debtor as a defendant.

## II. FACTUAL BACKGROUND

The facts are not in dispute. On or about February 23, 1990, debtor Bill Patrick Chambers agreed to purchase a 1990 Chevrolet truck from Pinegar, and took possession of such vehicle. That same date, debtor executed a promissory note and security agreement in favor of Pinegar, which thereafter sold and assigned its interest in such note and security agreement to Boatmen's National Bank of Springfield. In addition to executing such note and security agreement, debtor on that date delivered to Pinegar a 1982 Firebird, which secured a loan in the amount of $4,005.54, a Ford rebate of $1,000.00 and $500.00 cash. Debtor also on that date submitted to Pinegar an application for a motor vehicle title to be issued by the Missouri Department of Revenue, and tendered the necessary title application fee and sales tax.

The promissory note, security agreement, Application for Missouri Title, and Manufacturer's Statement of Origin (MSO) were delivered to the bank by Pinegar at the time of the assignment. However, such bank never forwarded the Application for Title, the filing fee, or the MSO to the Missouri Department of Revenue. As a result, no title was issued naming debtor as the owner of the vehicle, and listing the bank as the lienholder thereon.

On June 4, 1990, more than three months after the documentation was executed, consideration paid, and possession given, debtor informed Pinegar that he intended to file a bankruptcy petition. Debtor had not made any of the monthly payments that had come due prior to that time. On that date, debtor executed a "disclaimer of interest" in the vehicle, and in exchange obtained a release from Pinegar. Also on that date, Pinegar took back the note and security interest from the bank and issued a check payable to the bank in the amount of $14,705.67, which is equal to the amount Pinegar received from the bank when it assigned its interest in February. On June 7, 1990, debtor filed his Chapter 7 bankruptcy petition.

## III. MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 is incorporated into adversary actions pursuant to Federal Bankruptcy Rule 7056. Summary judgment is only available if there is no genuine issue as to any material fact, and the facts, when viewed in the light most favorable to the non-moving party, evidence that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In the present matter, the parties agree that there is no genuine dispute as to any material fact. The Trustee seeks relief on three alternative grounds: 1) the transfer of the vehicle from debtor to Pinegar represents a preference under 11 U.S.C. § 547; 2) the Trustee has the right to avoid any interest that Pinegar may claim in the vehicle under the strong-arm powers of 11 U.S.C. § 544; or 3) the Trustee is entitled to turnover of the vehicle pursuant to 11 U.S.C. § 542.

Put simply, the Trustee contends that as of the date the vehicle was returned to Pinegar, the debtor had an ownership interest in such vehicle, and that such ownership interest would have been an asset of his bankruptcy estate had he filed his bankruptcy petition immediately prior to returning the vehicle. Furthermore, the Trustee contends that neither Pinegar nor the bank had a validly-perfected lien on such vehicle as of the date it was returned. Therefore, Trustee contends, the transfer of such vehicle in satisfaction of the antecedent debt represented by the February 23, 1990 note is voidable as a preference under Section 547 of the Bankruptcy Code (11 U.S.C. § 547). Pinegar contends that debtor never had any titled interest in the vehicle and thus, there is no interest for the Trustee to recover.

The main legal dispute between the Plaintiff and Pinegar therefore centers on whether debtor had an interest in the vehicle, even though the Missouri Department of Revenue never issued a motor vehicle title in his favor. In Missouri, certificates of title to new vehicles are issued

by the Department of Revenue upon receipt of an MSO signed by the dealer, and application for titled signed by the buyer, and the required fee. In the case of *Galemore v. Mid–West National Fire and Casualty*, 443 S.W.2d 194 (Mo.App.1969), the Missouri Court of Appeals concluded that upon payment of consideration and actual possession of the motor vehicle, an insurable interest effectively passed to the vehicle purchaser, even though a certificate of title had not yet been issued. The Court said:

> We conclude that the dealer's execution and delivery of a bill of sale for the Dodge was not a prerequisite to the passing of title to plaintiff; that title passed to her when she paid the sale price of the Dodge, took actual physical possession of the automobile, and drove it out of the dealer's place of business on January 11, 1967; and that the vesting of title in her, as purchaser, was not deferred until form MMV–1–R2, the combination bill of sale and application for title completed and signed on that date, was transmitted to the director of revenue or until a certificate of ownership had been issued to her. [Citations omitted] 443 S.W.2d at 198.

The Court went on to find that even if delivery of title documents to the buyer were necessary to pass title, such documents had been delivered to the buyer, who executed and returned them to the dealership, which was then to file them with the Director of Revenue so that a formal Certificate of Title could be issued. The Court found that such dealership held such documents as the buyer's agent, so that actual delivery of the documents to her had been made. In any event, as shown, the Court found that the filing of such documents with the state, so that a certificate of title could be issued, was not a prerequisite to the passing of title to the buyer. *Galemore*, 443 S.W.2d at 198.

The facts in the present matter are similar to those in *Galemore*. Debtor did pay consideration to Pinegar, in the form of his trade-in, rebate, and $500.00 cash, and did take possession of the vehicle. Like the purchaser in *Galemore*, debtor also executed the application for title, and paid the required fee, leaving it to another party to complete the application process. As of the date upon which he took possession of the vehicle, paid consideration, and executed the necessary documents, debtor had the right to issuance of a Certificate of Title upon submission of the executed documents and fee to the state. Furthermore, in the present situation, more than three months passed after that date in which the debtor had possession of the vehicle, which is a substantially greater period of time than the week long period in *Galemore*. For those reasons, and based on Missouri law, I conclude that debtor did have an ownership interest in the vehicle prior to his returning it to Pinegar. Accordingly, Pinegar's motion for summary judgment shall be denied.

The next issue is whether the transfer to Pinegar of debtor's interest in such vehicle, some three days prior to the filing of the bankruptcy, was a voidable preference. Section 547 provides in relevant party as follows:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> > (1) to or for the benefit of a creditor;
> >
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> >
> > (3) made while the debtor was insolvent;
> >
> > (4) made—
> >
> > (A) on or within 90 days before the date of the filing of the petition; or
> >
> > (B) between ninety days and one year before the filing of the petition; if such creditor at the time of such transfer was an insider; and
> >
> > (5) that enables such creditor to receive more than such creditor would receive if—
> >
> > (A) the case were a case under chapter 7 of this title;
> >
> > (B) the transfer had not been made; and

(C) such creditor received payment of debt to the extent provided by the provisions of this title.

. . . . .

(f) For the purposes of this Section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

Debtor's interest in the vehicle was transferred for Pinegar's benefit when debtor disclaimed his interest on June 4, 1990. Thus, Section 547(b)(1) is satisfied. As evidenced by the release, executed on June 4, 1990, the transfer was in satisfaction of Pinegar's antecedent debt, which was incurred in February; therefore, (b)(2) is satisfied. Pinegar has not challenged the Section 547(f) presumption of insolvency; accordingly, (b)(3) is satisfied. And (b)(4) is satisfied since the subject transfer occurred on or within 90 days prior to the filing of the bankruptcy petition.

■ The next issue between Plaintiff and Pinegar is whether, as required by Section 547(b)(5), the creditor received more from the transfer than it would have received in a Chapter 7 liquidation absent the transfer. Had Pinegar held a perfected lien on the vehicle as of the date of the disclaimer, the Trustee may well not be able to establish this element since, in a Chapter 7 case, Pinegar would have been entitled to recover either is collateral or the value thereof. However, in this case, the lien had not been perfected. This conclusion is based upon the failure to register the vehicle and obtain a notation of lien on the motor vehicle title within the thirty day time period prescribed in Mo.Rev.Stat. §§ 301.190, subd. 1, 301.200, subds. 1 and 2, and 301.600, subds. 1 and 2. There would have been no preference, and quite likely no dispute regarding Pinegar's actions, if title had been delivered to the Department of Revenue within 30 days of the purchase, since there would have been prima facie evidence of true ownership of the subject vehicle and of the lien created in favor of Pinegar and/or the bank. Furthermore, if the title had been delivered to the Department of Revenue in a timely manner, the lienholder would have been considered perfected as of the date of the creation of the lien under Section 301.600, subd. 1. Pinegar's or perhaps more accurately, the bank's, failure to deliver the necessary documents to the Department of Revenue leaves the Court with the conclusion that Pinegar received more by reason of debtor's transfer than that which would have been received in a Chapter 7, if the transfer had not been made.

■ The final issue between Plaintiff and Pinegar is the amount of the preference received by Pinegar. This issue turns on the value of the vehicle at the time it was returned to Pinegar. Shortly thereafter, on July 20, 1990, the vehicle was sold to Mr. Curtis Steinmark for $13,418.00. Accordingly, the Court concludes that this is the value of the vehicle as of the date of the transfer, and that judgment should be entered in favor of the Trustee and against Pinegar in the amount of $13,418.00.

## IV. MOTIONS TO DISMISS OR ABSTAIN AS TO THIRD–PARTY COMPLAINTS

■ The Third–Party Complaint contends that Pinegar wound up with an unperfected lien on the vehicle due to the negligence of Boatmen's, which failed to send the Application for Title to the Department of Revenue. As indicated, the Motion for Leave to File the third-party complaint was filed after all evidence had been submitted in the main suit.

The third-party complaint does not assert any basis for this Court to exercise jurisdiction, and does not contain a statement that the proceeding is core or non-core. For that reason alone, the third-party complaint is defective and subject to dismissal. Bankruptcy Rule 7008(a).

In any event, having reviewed the response of Pinegar to the Motions to Dismiss and Abstain, I have concluded that dismissal of the third-party action is appropriate. The subject matter jurisdiction of United States District Courts over bankruptcy matters is set forth in 28 U.S.C. § 1334. The District Court is authorized to

refer all matters within the jurisdictional grant of 28 U.S.C. § 1334 to the Bankruptcy Judges for the district. 28 U.S.C. § 157(a). The District Court, and the bankruptcy judge to whom a case is referred by the District Court, have exclusive jurisdiction over all cases under Title 11, and non-exclusive jurisdiction over all proceedings arising under Title 11, arising in a case under Title 11 or "related to" a case under Title 11. The first issue here is whether the third-party complaint falls within any of these requirements of § 1334.

 The third-party complaint does not arise under Title 11. Congress used the phrase "arising under Title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of Title 11. *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 994 (8th Cir.1986). In this case, Pinegar in effect is seeking indemnification from Boatmen's by virtue of Boatmen's alleged negligence in failing to perfect a lien on the vehicle. Such cause of action is not based on a statutory right conferred by the Bankruptcy Code, but rather on state law.

Similarly, the third-party complaint does not arise in a proceeding under Title 11. This clause:

> seems to be in reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by Title 11, but nevertheless would have no existence outside of bankruptcy. *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987).

Here, Pinegar is seeking indemnification for losses it will suffer as a result of the Trustee's preference action. Although the third-party action is a response to a suit which is based on Title 11, the third-party action is by no means an incident to the administration of the bankruptcy case.

The final category included in § 1334(b) is "related to" jurisdiction. A dispute is "related to" the bankruptcy when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy ..." *In re Dogpatch*, 810 F.2d 782, 786 (8th Cir.1987); *See*

*also, In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987); *Home Insurance Co. v. Cooper and Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989) (related proceeding is one which "affects the amount of property available for distribution or the allocation of property among creditors."). Even though the Eighth Circuit's definition of "related to" jurisdiction is broad, the dispute between Pinegar and Boatmen's is not "related to" this bankruptcy case. Boatmen's was not included by the Chapter 7 Trustee as a defendant in the original adversary case. Neither the amount of property available for distribution, nor the allocation of property among creditors, is affected by the dispute between Pinegar's and Boatmen's. As matters now stand, Pinegar is required to pay the amount of the preference to the Trustee, and upon such payment will be entitled to an unsecured claim in the amount of the payment. In the event Pinegar succeeds in its action against Boatmen's, Boatmen's would be required to reimburse Pinegar for the amount so paid to the Trustee, and would succeed to Pinegar's interest as an unsecured creditor in the case. Most importantly, no matter which party prevails in the litigation between Pinegar and Boatmen's, the result will be the same for the estate and its other creditors.

 Having determined that Pinegar's third-party claim does not fall within the subject matter jurisdiction conferred by 28 U.S.C. § 1334, the final basis raised by Pinegar for exercising jurisdiction is "pendent-party" jurisdiction. Pendent-party jurisdiction has been defined by the Supreme Court as "jurisdiction over parties not named in any claim that is independently cognizable by the Federal Court." *Finley v. U.S.*, 490 U.S. 545, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). The basic theory of such jurisdiction is that once the District Court acquires jurisdiction over a case or controversy, as an incident to deciding the case before it, such court may exercise jurisdiction over matters and parties raised by the case over which the Court would not have jurisdiction were the matters raised independently. 6 Wright,

Miller and Kane, *Federal Practice and Procedure* Civil 2d § 1444 at 316–17 (1990). Here, the underlying cause of action is the Trustee's preference action against Pinegar which arises under Title 11 and over which this Court has jurisdiction. The issue is whether Pinegar's third-party claim against Boatmen's can be resolved by this Court as a claim that is pendent to the underlying preference action and over a party, Boatmen's, as to which this Court has no independent basis for jurisdiction.

A number of complicated issues are raised by the assertion of pendent-party jurisdiction in any context, but particularly in a Bankruptcy Court. *In re Spaulding & Co.*, 111 B.R. 689 (Brktcy.N.D.Ill.1990). Certainly, questions exists as to whether the exercise of pendent-party jurisdiction in this case would satisfy the constitutional and statutory requirements for the assertion of such jurisdiction. *See, In re Spaulding & Co.*, supra; *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966); *Finley v. U.S.*, supra. Boatmen's has not yet filed an Answer in the case and could demand a jury trial in such Answer. In this Circuit, Bankruptcy Judges are not authorized to conduct jury trials. *Matter of United Missouri Bank*, 901 F.2d 1449 (8th Cir.1990).

Putting all these potential complications to the side, the exercise of pendent jurisdiction is within the sound discretion of the trial judge. *United Mine Workers v. Gibbs*, supra. In this case, it would be inappropriate to exercise such jurisdiction, even assuming that it exists. Prior to the filing of the third-party complaint, the matter had been completely submitted to the Court for decision. While the dispute between Pinegar and Boatmen's is founded upon the same set of facts as is the Trustee's action against Pinegar, there are a number of facts and arguments related to the third-party action which have not been considered by the Court in deciding the main action. The dispute between Pinegar and Boatmen's will turn on the agreement between those parties concerning the financing, the duty of care required to be exercised by them, and the actions taken by each to comply with their respective duties. Furthermore, the outcome of that litigation will be dependent upon an interpretation of Missouri law as to the agreement between the parties, as to what duty of care existed, and as to whether any steps taken were sufficient to satisfy that duty of care. These are matters which are best determined by a State Court, with or without jury as the parties wish. Since the resolution of that dispute will have no impact on this bankruptcy estate, and since the State Courts are best qualified to determine those issues, the exercise of pendent jurisdiction as to the third-party complaint is not appropriate.

## V. CONCLUSION

For the above and foregoing reasons, the Court ORDERS as follows:

1. Judgment should be entered in favor of the Plaintiff and against Defendant Pinegar Chevrolet, Inc. in the amount of $13,418.00, with each party to bear its own costs; and

2. The motion of Boatmen's First National Bank of Springfield to dismiss the third-party complaint is SUSTAINED.