In re David C. **FOX**, Debtor(s).

**John J. Hunter, Trustee, Plaintiffs,**

v.

**Snap–On Credit Corporation, Defendants.**

**Bankruptcy Nos. 98–3085, 97–33463.**

United States Bankruptcy Court,
N.D. Ohio.

Nov. 24, 1998.

162

John J. Hunter, Toledo, OH, for plaintiff.

Stephen D. Miles, Dayton, OH, for defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Defendant's Motion for Summary Judgment, Memorandum in Support, and Reply; and the Plaintiff's Response to the Defendant's Summary Judgment Motion, Memorandum in Support, and Response to the Defendant's Reply. The Court has reviewed the arguments of counsel, the exhibits as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Defendant's Motion for Summary Judgment should be DENIED; and that the matter should be scheduled for a Pre–Trial.

## FACTS AND PROCEDURAL HISTORY

The facts giving rise to this dispute are as follows. On May 8, 1996, Mr. David C. Fox (hereinafter Debtor) entered into an agreement with Patrick Hurley, the authorized dealer for Snap–On Tools (hereinafter Defendant), for the lease of two pieces of air-conditioning equipment. The equipment was to be used by the Debtor in his business which was located in Toledo, Ohio, and which operated under the name of Affordable Radiator. The total cost of this equipment was Nine Thousand Seven Hundred Eighty-four and 55/100 Dollars ($9,784.55), which was to be paid by the Debtor in Forty-eight (48) monthly installments of Two Hundred Sixty-seven and 41/100 Dollars ($267.41). The terms of the lease agreement entered into by the parties provided, inter alia, that, (1) at the end of the lease term the Debtor could become the owner of the equipment by paying a "Buyout Charge" of One Dollar ($1.00), and (2) if the Debtor canceled or otherwise terminated the lease before the expiration of the Forty-eight (48) month period, the Debtor would thereafter become immediately liable for the total outstanding balance remaining on the equipment lease. On May 20, 1996, a UCC–1 financing statement covering the lease agreement, and naming the Defen-

dant as the assignee, was filed with the Ohio Secretary of State.

Sometime thereafter, due to circumstances not relevant in this proceeding, the Debtor was unable to make the monthly installment payments on the lease. Therefore, on June 23, 1997, the Debtor returned the air-conditioning equipment to the Defendant, at which time the outstanding balance on the lease was Ten Thousand Two Hundred Twelve and 39/100 Dollars ($10,212.39), inclusive of finance charges. Contemporaneous with the Debtor's return of the equipment, an appraisal was conducted which ascertained the equipment's fair market value to be Four Thousand Dollars ($4,000.00). This amount was immediately applied by the Defendant to the Debtor's outstanding debt, leaving arrearages totaling Six Thousand Two Hundred Twelve and 39/100 Dollars ($6,212.39).

A little more than two months after returning the equipment, the Debtor filed a Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code. In the Debtor's amended Bankruptcy Schedules, the Defendant was named as a party holding both an unsecured nonpriority claim, and a party with whom the Debtor had an unexpired executory contract. John Hunter, the Plaintiff in this action, was subsequently appointed as the Trustee, and as a result of the Debtor's prepetition transfer of the leased equipment to the Defendant, the Trustee filed this adversarial complaint to recover the transfer as a preference pursuant to 11 U.S.C. § 547. The Defendant filed an Answer denying the allegation, and after discovery was completed the Defendant filed a Motion for Summary Judgment.

## LAW

Section 547(b) of the Bankruptcy Code provides in pertinent part:

(b) the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title

## DISCUSSION

The only matter in dispute in this action concerns the fifth element of § 547(b) which deems a prepetition transfer preferential if such a transfer enables the creditor to receive more than it would have if, (1) the case were a case under Chapter 7, (2) the transfer had not been made, and (3) the creditor received only the distribution to which the creditor would have been entitled to receive in the liquidation case. § 547(b)(5); *see In re Finn*, 86 B.R. 902, 904 (Bankr.E.D.Mich. 1988), *order aff'd*, 111 B.R. 123 (E.D.Mich. 1989) *judgment rev'd on other grounds*, 909 F.2d 903 (6th Cir.1990). A simpler way of putting this is to ask whether the transferee would receive more, as a result of the prepetition transfer, than it otherwise would have in a hypothetical Chapter 7 distribution. Proceedings to determine, avoid, or recover preferences are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F). Thus, this case is a core proceeding.

 This matter comes before the Court upon the Defendant's Motion for Summary Judgment. Thus, it is the Defendant who must demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, as there is a presumption afforded to a creditor that payments received from a debtor are valid, the burden of proof is placed on the party contesting the transfer, to prove by a

**164**

preponderance of the evidence, that every element of § 547(b)(5) is met. 11 U.S.C. § 547(g); *In re Sin–Ko, Inc.*, 72 B.R. 651 (Bankr.N.D.Ohio 1987); 4 Collier on Bankruptcy 547.55 at 547–191–93 (15th ed.1986). Therefore, Fed.R.Civ.P. 56 requires that in order for the Trustee to survive the Defendant's Motion for Summary Judgment, the Trustee must go beyond his mere pleadings, and is instead required to designate specific facts so as to make a showing sufficient to establish that the requirements of § 547(b)(5) are satisfied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Romstadt v. Allstate Ins. Co.*, 844 F.Supp. 361 (Bankr. N.D.Ohio 1994) *aff'd*. 59 F.3d 608. In ascertaining whether the Defendant and the Trustee have met their respective burdens, the Court will construe all the facts in the light most favorable to the Trustee as he is the nonmoving party. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell*, 181 B.R. 311 (Bankr.N.D.Ohio 1995).

The Defendant in his Motion for Summary Judgment puts forth two legal arguments, which the following will examine, to establish that the transfer it received from the Debtor was not preferential. First, the Defendant asserts that the transaction at issue was a lease. Consequently, the Defendant argues that the Debtor's interest in the air-conditioning equipment had no cash value, and thus the Debtor's prepetition return of the leased property did not enable the Defendant to receive any more than it would have in a hypothetical Chapter 7 distribution.

■ The Court agrees with the Defendant's statement of the law. *See* 11 U.S.C. § 341; *see also In re American International Airways, Inc.*, 44 B.R. 143, 145 (Bankr. E.D.Pa.1984); *Livesey Enterprises v. Smith Management, Inc.*, 8 B.R. 346, 347 (1980).[1] However, for purposes of the Bankruptcy Code, merely labeling an agreement a lease, is not necessarily dispositive that the trans-

action under consideration actually created a lease. *In re Bevis Co.*, 201 B.R. 923, 925 (Bankr.S.D.Ohio 1996); *In re Lunan Family Restaurants*, 194 B.R. 429, 450 (Bankr. N.D.Ill.1996). Instead, this Court must look to the substance of the underlying transaction to determine whether the Parties' agreement actually created a true lease, or instead resulted in an installment sales contract in which was contained a disguised security interest.

■ Property rights in bankruptcy proceedings are determined by reference to the applicable state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re DWE Screw Products*, 157 B.R. 326, 330 (Bankr.N.D.Ohio 1993); *In re Victoria Hardwood Lumber*, 95 B.R. 947, 952 (Bankr.S.D.Ohio 1988) (citing H.R. No. 95–595, 95th Cong., 1st Sess. at 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787). The appropriate state law in this case is O.R.C. § 1301.01(KK)(2), which directs the Court to take into consideration all the facts of each case in making its determination of whether a transaction created a lease or security interest. In addition, Ohio law conclusively considers a transaction to be a security interest, instead of a lease, regardless of any other factors that may be present in the case if:

the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and if any of the following applies:

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods;

(b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration

---

1. Black's Law Dictionary defines a lease as a "contract by which one owning such property grants to another the right to possess, use and enjoy it for specified period of time in exchange for periodic payment of a stipulated price, referred to as rent." BLACK'S LAW DICTIONARY, 889 (6th ed.1990)

upon compliance with the lease agreement;

(d) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

O.R.C. § 1301.01(KK)(2). For the following reasons, when applying the foregoing standards to the facts of this case, the Court concludes that the agreement entered into between the Defendant and the Debtor did not create a true lease, but instead formed a security interest. First, the threshold requirement of O.R.C. § 1301.01(KK)(2) is met as the Debtor could not cancel the "lease agreement" without simultaneously incurring an immediate obligation for the total cost of the air-conditioning equipment. Second, condition four (4), from above, is met as the Debtor was given in the lease agreement an option to purchase the air-conditioning equipment at the end of the lease term for the nominal sum of One Dollar ($1.00).

■ However, the Defendant's second argument, contemplating the foregoing analysis, holds that even if its transaction with the Debtor constituted a security interest, no preferential transfer was received by the Defendant because, as a secured creditor, it was entitled to receive the return of its collateral upon the Debtor's default. Therefore, the Defendant asserts that it did not receive any more, from the Debtor's prepetition transfer, than it otherwise would have in a hypothetical Chapter 7 distribution.

■ Again, the Court generally agrees with the Defendant's pronouncement of the law. Under the Bankruptcy Code's priority scheme, if a security interest is properly perfected, this interest must be first satisfied from the assets of the property it encumbers before any proceeds from the sale of that property are made available to the unsecured claimants, including those having priority status such as the holders of administrative claims. *United States v. Darnell*, 834 F.2d 1263, 1265 (6th Cir.1987); *see* § 554; § 725. Thus, prepetition transfers made to secured creditors are generally not preferential in nature as no diminution of the debtor's bankruptcy estate occurs therefrom.[2] *In re Lill*, 116 B.R. 543, 549 (Bankr.N.D.Ohio 1990); *In re Hatfield Elec. Co.*, 91 B.R. 782, 786 (Bankr.N.D.Ohio 1988); *In re Southwest Equipment Rental, Inc.*, 137 B.R. 263, 269 (Bankr.E.D.Tenn.1992). 4 Collier on Bankruptcy § 506.03[4][a] (15th ed.1998); *see* 11 U.S.C. § 506(a).

■ The Trustee, however, asserts that the Defendant's security interest in the Debtor's collateral, not being properly perfected, is void pursuant to 11 U.S.C. § 544(a).[3] This section, which is known as the "strong arm" clause, confers upon the Bankruptcy Trustee the status of a hypothetical judicial lien holder which allows the Trustee to take priority over liens and security interests against the debtor's bankruptcy estate which were not perfected or which were improperly perfected under the applicable state law prior to the debtor's bankruptcy filing. However, unlike the state rules of priority which simply subordinate the unperfected security interest against the judicial lien, the Bankruptcy Code completely eliminates the unperfected security interest, leaving the secured creditor with only an unse-

---

2. However, this is not always the case with an undersecured creditor. An undersecured creditor is a party whose security interest in the collateral is less than the obligation owed by the debtor, thereby resulting in the creditor's debt not being fully collateralized. Under the Bankruptcy Code, undersecured creditors are treated as holding two claims; one fully secured and the other unsecured. 11 U.S.C. § 506(a). Normally, in such a situation prepetition transfers received by the undersecured creditor are deemed preferential as there is a presumption that an undersecured creditor first applies any transfer it receives from the debtor to the unsecured portion of the debt. *In re McCormick*, 5 B.R. 726, 729–30 (Bankr.N.D.Ohio, 1980) (holding this com-

ports with standard business practices); *In re Ludford Fruit Products, Inc.*, 99 B.R. 18, 23 (Bankr.C.D.Cal.1989).

3. Pursuant to Bankruptcy Rule 7001(2), an adversarial proceeding must be brought to attack a lien under § 544(a). In the instant case, the averments contained in the Trustee's Complaint only attacked the Debtor's prepetition transfer on the basis that it was a preference under § 547(b). Consequently, if the Trustee wishes to avoid the Defendant's security interest, his Complaint should be amended pursuant to Bankruptcy Rule 7015.

cured claim against the debtor's bankruptcy estate. *In re Columbus Typewriter Co., Inc.*, 75 B.R. 834, 838 (Bankr.N.D.Miss.1987); *In re Fitness Connection, Inc.*, 76 B.R. 534, 538 (Bankr.D.Md.1987); *In re Freeman*, 72 B.R. 850, 855 (Bankr.E.D.Va.1987). The effect of this is that prepetition transfers made to unperfected secured creditors will be necessarily preferential under § 547(b)(5) as the now unsecured creditor, having no claim in any specific property of the debtor's bankruptcy estate, must share pro-rata with the other unsecured creditors in the remaining assets of the debtor's bankruptcy estate after the secured creditors have received their remuneration. Thus, unless there are enough assets in the debtor's bankruptcy estate to enable all of the unsecured creditors to receive a 100% distribution, any prepetition payments made to an unsecured creditor will be preferential under § 547(b) as such payments will allow that creditor to receive more than it otherwise would have in a hypothetical Chapter 7 distribution.[4] *Chattanooga Wholesale Antiques Inc.*, 930 F.2d 458, 465 (6th Cir.1991) (holding that unless the estate is sufficient to provide a 100% distribution, any unsecured creditor who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation); *see also Barash v. First Galesburg National Bank*, 658 F.2d 504, 508–09 (7th Cir.1981). Accordingly, there is a presumption that when the Bankruptcy Trustee avoids a creditor's security interest on the basis of it not being properly perfected under § 544(a), any prepetition transfer made to that creditor will be preferential under § 547(b)(5). *See In re Walls*, 91 B.R. 825, 827–28 (Bankr. S.D.Ohio1988) (holding that returning collateral subject to a security interest is preferential if the creditor fails to properly perfect its security interest); *In re Chambers*, 125 B.R. 788, 792 (Bankr.W.D.Mo.1991) (holding that a prepetition surrender of a vehicle to the dealer constituted a preference because the dealer had failed to properly perfect its security interest on the certificate of title).

In the case sub judice, the Trustee's basis for avoiding the Defendant's security interest rests solely on the grounds that the Defendant failed to properly file a financing statement covering the security interest. Specifically, the Trustee asserts that the Defendant's filing procedure was defective because the Defendant only filed centrally, instead of filing both centrally and locally.

The Bankruptcy Code prescribes that filing procedures are to be effectuated according to the applicable state law. *Maloney v. American Nat'l Bank*, 117 B.R. 47, 49 (Bankr.D.Conn.1990). Thus, a proper method of filing in one state may not be sufficient to properly perfect a security interest in another state. Under Ohio law, the proper method for filing a financing statement centers around the type of collateral that is being secured. In the instant case, the Debtor purchased the air-conditioning equipment for use in his business which operated under the name of Affordable Radiator. Thus, under Ohio's statutory scheme for categorizing collateral, the Defendant's security interest was in "equipment" which is defined as a good that is "used or bought for use primarily in business ..." O.R.C. § 1307(B). Ohio law thereafter prescribes that in order to properly perfect a security interest in "equipment", the financing statement must be filed "in the office of the secretary of state and, in addition, if the debtor has a place of business in only one county of this state, also in the office of the county recorder of such county...." O.R.C. 1309.38(A)(4).

The Defendant in this case, however, has failed to comply with the foregoing procedure. First, no evidence has been presented to the Court tending to show that the Debtor at anytime had a place of business in more than one county in the state of Ohio. Thus, the Defendant was required to file both centrally and locally. Second, the Court only has before it a copy of the financing statement filed centrally with the Ohio Secretary of State. Consequently, as this Court will not presume that the Defendant also filed a financing statement locally with the County

---

**4.** The only major exception to this rule is a prepetition transfer made to a priority unsecured creditor. In such a situation, if there is enough money in the debtor's bankruptcy estate to pay all the claims having the same priority in full, then there is no preference under § 547(b)(5).

Recorder's Office, the Court finds, for purposes of the Summary Judgment Motion, that the Defendant failed to properly file its financing statement pursuant to O.R.C. 1309.38(A)(4).

However, the failure by the Defendant to properly file its security interest does not automatically entitle the Trustee to avoid the Defendant's security interest in the collateral. Rather, the Court must examine two related issues that were indirectly addressed by the parties in their pleadings and motions. First, Ohio law does not automatically render ineffectual a perfected security interest because of a minor procedural defect in filing. Precisely, Ohio law provides that, "[a] filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective ... with regard[s] to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement." O.R.C. § 1309.38(B). The purpose of this section is to prevent a party, with actual knowledge of the creditor's security interest, from pleading a technical violation in order to circumvent the creditor's security interest.

■ Unfortunately, for the Defendant, a creditor involved in bankruptcy proceedings may not avail themselves to the protection of the foregoing statutory provision. Under § 544(a) of the United States Bankruptcy Code, a Chapter 7 Trustee is specifically relieved from the effect his actual knowledge may have on the secured creditor's interest. *Gordon Square Pharmacy, Inc. v. Harris Wholesale Company*, 138 B.R. 533, 535-36 (Bankr.N.D.Ohio 1992); *see also Wasserman v. Society National Bank*, 58 B.R. 912 (Bankr.N.D.Ohio 1986). Hence, where a dual filing of a financing statement is required, the creditor in a bankruptcy proceeding is not excused from filing in both locations. *Ledford v. Farmers State Bank & Trust Co.*, 53 B.R. 395, 398 (Bankr.S.D.Ohio 1985); *Pryor v. Pryor*, 215 B.R. 362 (Bankr. N.D.Ohio 1997).

■ However, filing is not the only method to properly perfect a security interest. Under the Ohio Revised Code, perfection may also be accomplished by the creditor taking physical possession of the debtor's collateral. O.R.C. § 1309.24.[5] Thus, in the instant case, the Defendant's security interest may have become properly perfected when the Debtor returned to the Defendant the air-conditioning equipment subject to the security interest. If this is the case, then the Trustee is precluded from avoiding the Defendant's security interest in the air-conditioning equipment under § 544(a). The Trustee appears to contest this rationale by putting forth various arguments based on the formalities that occurred in the underlying transaction between the Debtor and the Defendant. For example, the Trustee asserts that the Defendant has failed to put forth sufficient evidence tending to establish that the Defendant actually took possession of the collateral. However, pursuant to the following analysis, even if the Defendant did in fact take possession of the collateral, and thereby properly perfect its security interest, the prepetition transfer made by the Debtor was nevertheless preferential under § 547(b).

It is well established that the granting of a security interest has a preferential effect as it improves the position of that creditor with respect to the other general unsecured creditors. *In re Compton*, 831 F.2d 586, 594-95 (5th Cir.1987). In addition, and of upmost importance in this case, is the fact that the mere act of perfecting a security interest within the preference period has a preferential effect as it allows that creditor to realize more than it otherwise would have in a liquidation under Chapter 7. *Bavely v. Wandstrat*, 146 B.R. 963, 973 (Bankr.S.D.Ohio 1992). However, as the Trustee may only avoid a security interest if the transfer of that interest occurred within the 90 days immediately prior to the Debtor filing for bankruptcy, ascertaining the time at which the transfer of the interest took place becomes of upmost importance.[6] § 547(b)(4)(A).

5. This section provides that, "[a] security interest in letters of credit, as provided in division (F) of section 1305.13 of the Revised Code, goods, instruments, negotiable documents, money, or chattel paper may be perfected by the secured party's taking possession of the collateral."

6. The granting of a security interest is clearly a transfer within the definition of § 547(b). *See*

For purposes of § 547(b), a transfer occurs when the security interest is perfected, and not when the security agreement is entered into, except when the security interest is perfected at or within ten (10) days after the security agreement is made. §§ 547(e)(2)(A) & (B); *Fink v. Fidelity Financial Serv. Inc.,* 183 B.R. 857, 861 (Bankr.W.D.Mo.1995). Applying this standard to the facts of this case, the transfer between the Debtor and Defendant occurred on June 23, 1997, the date on which the Defendant perfected its security interest by taking possession of the collateral, and not on May 8, 1996, when the parties entered into their agreement, as these two events occurred considerably farther apart in time than ten (10) days. As a result, the transfer between the Debtor and the Defendant took place within the ninety (90) day preference period considering that the Debtor declared bankruptcy a little over two months after the Defendant took possession of the air-conditioning equipment. Accordingly, the Defendant's repossession of his collateral on June 23, 1997, even if properly perfecting its security interest, will not prevent the Trustee from recovering the prepetition transfer as a preference pursuant to § 547(b). *See generally In re Herman's Tops 'N Bottoms, Inc.,* 88 B.R. 442 (Bankr. S.D.Fla.1988); *McLemore v. Carson, Ltd.,* 34 B.R. 947, 951–952 (Bankr.M.D.Tenn.1983).

In summary, the Defendant's transaction with the Debtor was a security interest and not a lease. Consequently, for the Defendant to protect its interest in a bankruptcy proceeding against the Trustee's avoiding powers under § 544(a), the Defendant was required to properly perfect its security interest. This the Defendant failed to do when it only filed its security interest centrally, instead of filing both centrally and locally pursuant to O.R.C. § 1309.38(A)(4). Thus, for purposes of this Summary Judgment Motion, the Defendant was a general unsecured creditor. Accordingly, when viewing everything in the light most favorable to the Trustee, the prepetition transfer the Defendant received from the Debtor was a prefer-

ence pursuant to § 547(b) as it enabled the Defendant to receive more than it otherwise would have in a hypothetical Chapter 7 distribution. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment of Snap–On Credit Corporation be, and is hereby, DENIED.

It is **FURTHER ORDERED** that a Pretrial be, and is hereby set for December 14, 1998, at 1:30 PM, in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio, to allow the Court to consider the Plaintiff's claim that the Defendant's Security Interest in the air-conditioning equipment is void pursuant to 11 U.S.C. § 544(a).

---

*e.g., Vogel v. Russell Transfer, Inc.,* 852 F.2d 797 (4th Cir.1988). 11 U.S.C. § 101(54) defines a transfer as, every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.